**Electronically Filed
Intermediate Court of Appeals
CAAP-13-0002957
25-FEB-2015
01:44 PM**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---o0o---

STATE OF HAWAI'I, Plaintiff-Appellee,
vs.
LORI L. TURPING, Defendant-Appellant.

CAAP-13-0002957

APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
HONOLULU DIVISION
(1DTA-13-00639)

FEBRUARY 25, 2015

NAKAMURA, CHIEF JUDGE, AND FOLEY AND FUJISE, JJ.

OPINION OF THE COURT BY NAKAMURA, C.J.

INTRODUCTION

I.

Defendant-Appellant Lori L. Turping (Turping) appeals her conviction for operating a vehicle under the influence of an intoxicant (OVUII). At 3:00 a.m., the sound of a horn honking intermittently drew the attention of police officers to Turping's vehicle. The vehicle was stopped, for no apparent reason, in middle of the road, approximately 50 to 60 feet before the intersection, requiring other vehicles to drive around it. Turping was in the driver's seat, with her head slightly tilted backward, mouth open, and eyes closed. She appeared to be sleeping. Turping's car then began to drift toward the intersection at about 5 miles per hour. An officer ran to the

vehicle, opened the door, and stepped on the brake. The car came to a stop as it struck the curb.

In checking to see whether Turping was okay, the officers noticed an odor of alcohol coming from her vehicle. Turping agreed to perform field sobriety tests, but informed the officers that she was disabled and under a doctor's care for problems with her leg and back. Turping performed poorly on the sobriety tests. She swayed from side to side and was unable to keep her balance. In addition, Turping's eyes were glassy, she smelled of alcohol, and her faced was flushed. The police arrested Turping for OVUII.

Turping testified that she had "two beers" at a lounge in the early evening before her arrest. According to Turping, after helping a friend for several hours, her car overheated as she drove home, so she pulled over to rest the engine. While waiting, she started to fall asleep. When her car cooled off, she resumed driving. Turping admitted, however, that she "fell asleep again at . . . the light." Turping acknowledged performing poorly on the field sobriety tests but attributed this to back and knee injuries. She stated that she needed crutches to walk at that time. The District Court of the First Circuit (District Court) found Turping guilty of OVUII.[1]

II.

Turping was charged with OVUII for operating "a vehicle . . . while under the influence of alcohol[,]" in violation of Hawaii Revised Statutes (HRS) § 291E-61(a)(1) (Supp. 2014).[2] On

---

[1] The Honorable David W. Lo presided.

[2] HRS § 291E-61(a)(1) provides:

   (a) A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:

      (1)   While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty[.]

appeal, Turping contends that her OVUII charge was "fatally defective" because it only used the term "alcohol" and did not allege the statutory definition of alcohol, which contains an exception for "denatured or other alcohol that is considered not potable under the customs laws of the United States." HRS § 291E-1 (2007). Turping argues that by using the term "alcohol" without also alleging the exception in the statutory definition, the OVUII charge failed to provide her with fair notice of the charge against her.

As explained below, we reject Turping's argument. We hold that Turping's OVUII charge was sufficient and provided her with fair notice of the offense for which she was charged.

DISCUSSION

I.

Plaintiff-Appellee State of Hawai'i (State) charged Turping by complaint with OVUII, as follows:

> On or about the 10th day of February, 2013, in the City and County of Honolulu, State of Hawaii, LORI L. TURPING did intentionally, knowingly or recklessly operate or assume actual physical control of a vehicle upon a public way, street, road, or highway <u>while under the influence of alcohol</u> in an amount sufficient to impair her normal mental faculties or ability to care for herself and guard against casualty, thereby committing the offense of Operating a Vehicle Under the Influence of an Intoxicant, in violation of Section 291E-61(a)(1) of the [HRS]. LORI L. TURPING is subject to sentencing as a first offender in accordance with Section 291E-61(b)(1) of the [HRS].

(Emphasis added.)[3/]

For purposes of the OVUII offense, the term "alcohol" is defined as:

> "Alcohol" means the product of distillation of any fermented liquid, regardless of whether rectified, whatever may be the origin thereof, and includes ethyl alcohol, lower aliphatic alcohol, and phenol as well as synthetic ethyl alcohol, <u>but not denatured or other alcohol that is considered not potable under the customs laws of the United States</u>.

---

[3/] Turping was also charged with refusal to submit to testing, in violation of HRS § 291E-68 (Supp. 2014), and driving without motor vehicle insurance, in violation of HRS § 431:10C-104(a) (2005). These charges were dismissed with prejudice by the State and will not be further discussed.

HRS § 291E-1 (emphasis added).[4]

Turping moved to dismiss the OVUII charge before trial on the ground that the complaint was defective for failing to allege the "special statutory definition for the term 'alcohol[.]'" The District Court denied the motion. After a bench trial, the District Court found Turping guilty as charged and sentenced her to license revocation for a year, participation in substance abuse rehabilitation, a fine of $500, and various fees and assessments.

II.

On appeal, Turping contends that the complaint was fatally defective because it failed to properly allege the "element of alcohol." Specifically, Turping argues that for purposes of the OVUII offense, the term "alcohol" is statutorily defined as "a certain type of alcohol" and does not include "all types of alcohol." Turping asserts that the State's use of the term alcohol in the complaint, without alleging the statutory definition of alcohol, resulted in the failure to state an offense and deprived her of fair notice of the charge. We disagree.

As explained below, the statutory exception for "denatured or other alcohol that is considered not potable under the customs laws of the United States" (exception for denatured or other non-potable alcohol) is a defense to the OVUII offense that the State was not required to allege in its OVUII charge

---

[4] The definition of "alcohol" set forth in HRS § 291E-1 was added in 2000, see 2000 Haw. Sess. Laws Act 189, § 23 at 407, and appears to have been taken from the definition of "alcohol" in HRS § 281-1 (2007) that applies to HRS Chapter 281. HRS Chapter 281, entitled "Intoxicating Liquor," establishes county liquor commissions responsible for issuing licenses for the manufacture, importation, and sale of liquors. Federal regulations provide for means to denature alcohol thereby rendering it unfit for use as a beverage. See 27 C.F.R. §§ 21.11, 21.21, 21.31.

It is unclear why the Legislature chose, for purposes of the OVUII offense, to utilize a definition of "alcohol" that excludes denatured or other non-potable alcohol under the customs laws of the United States. It would appear that a person driving who is impaired by alcohol not fit to drink as a beverage would be just as dangerous as someone impaired by alcohol fit to drink as a beverage.

4

against Turping. The State's use of the term "alcohol" in its OVUII charge gave Turping fair notice of the nature and cause of the accusation against her.

### III.

### A.

"It has long been held that indictments need not anticipate and negate possible defenses; rather, it is left to the defendant to show his defenses at trial." State v. Adams, 64 Haw. 568, 569, 645 P.2d 308, 309 (1982). Based on this principle, the Hawai'i Supreme Court in Adams held that the indictment was not required to include or negate a statutory defense in order to be sufficient. Id. at 568-70, 645 P.2d at 309-10.[5/] In addition, HRS § 806-29 (2014) specifically provides that an indictment is not required to negate exceptions set forth in the statute establishing the offense. HRS § 806-29 provides as follows:

> **§ 806-29 Exceptions need not be negatived.** No indictment for any offense created or defined by statute shall be deemed objectionable for the reason that it fails to negative any exception, excuse, or proviso contained in the statute creating or defining the offense. The fact that the charge is made shall be considered as an allegation that no legal excuse for the doing of the act existed in a particular case. [6/]

In State v. Nobriga, 10 Haw. App. 353, 873 P.2d 110 (1994), overruled on other grounds by State v. Maelega, 80 Hawai'i 172, 178-79, 907 P.2d 758, 764-65 (1995), this court set

---

[5/] In Adams, a physician was charged by indictment with the offenses of promoting dangerous and harmful drugs, where the charges did not include the statutory defense provided to physicians who possessed or distributed the drugs under authority of law. Adams, 64 Haw. at 568-69, 645 P.2d at 309. The supreme court addressed the question of whether "the State, having knowledge of a defense, must include the defense in the language of the indictment[.]" Id. at 568, 645 P.2d at 309. The supreme court held that "the indictment was not required to negate the defense and thus, the indictment sufficiently alleged all of the essential elements of the offense[s] charged." Id. at 569-71, 645 P.2d at 310. The supreme court therefore overturned the trial court's dismissal of the indictment for failing to allege the defense. Id. at 568-71, 645 P.2d at 309-10.

[6/] Although HRS § 806-29 applies to indictments filed in circuit court, we see no reason why more stringent requirements would be imposed on complaints charging less serious offenses filed in district court.

forth a framework for determining whether an exception contained in a statute is a "defense" to or an "element" of an offense. In <u>Nobriga</u>, we stated:

> The general and well-settled common law rule is that where an exception is embodied in the language of the enacting clause of a criminal statute,[fn] and therefore appears to be an integral part of the verbal description of the offense, the burden is on the prosecution to negative that exception, prima facie, as part of its main case. Annotation, <u>Burden of Averment and Proof As to Exception in Criminal Statute on Which the Prosecution Is Based</u>, 153 A.L.R. 1218, 1226 (1944); 1 <u>Wharton's Criminal Evidence</u> § 20, at 35 (C. Torcia 13th ed. 1972).
>
> <u>This general rule does not apply, however, "when the facts hypothesized in the exceptive provision are peculiarly within the knowledge of the defendant, or the evidence concerning them is within the defendant's private control."</u> 1 <u>Wharton's Criminal Evidence</u> § 20, at 35. Furthermore, when the exception appears somewhere other than in the enacting clause, and is thus a distinct substantive exception or proviso, the burden is on the defendant to bring forward evidence of exceptive facts that constitute a defense. Annotation, 153 A.L.R. at 1277-78; 1 <u>Wharton's Criminal Evidence</u> § 20, at 35. The prosecutor is not required in such instances to negative, by proof in advance, exceptions not found in the enacting clause. 1 <u>Wharton's Criminal Evidence</u> § 20, at 33-34.

---

> [fn] In criminal nomenclature, the term "enacting clause" has long been applied to the prohibitory declaration of the statute which contains the general or preliminary description of the acts prohibited; i.e., the clause which proscribes the offensive deed. Annotation, <u>Burden of Averment and Proof As to Exception in Criminal Statute on Which the Prosecution Is Based</u>, 153 A.L.R. 1218, 1226 (1944).

<u>Nobriga</u>, 10 Haw. App. at 357-58, 873 P.2d at 112-113 (brackets omitted; emphasis added). The Hawai'i Supreme Court has adopted and applied the <u>Nobriga</u> framework. <u>See</u> <u>State v. Jenkins</u>, 93 Hawai'i 87, 106-07, 997 P.2d 13, 32-33 (2000); <u>State v. Lee</u>, 90 Hawai'i 130, 137-39, 976 P.2d 444, 451-53 (1999).

B.

In applying the <u>Nobriga</u> framework to this case, we conclude that the statutory exception for denatured or other non-potable alcohol is a "defense" to the OVUII offense, and is not

an "element" of the offense that is required to be alleged in an OVUII charge.[1]  Alcohol is denatured by adding substances that render it unfit for use as a beverage.  See 27 C.F.R. §§ 21.11, 21.21, 21.31.  "[P]otable" means "fit or suitable for drinking"[2] and therefore non-potable alcohol is alcohol that is not fit to drink.  Accordingly, the exception for denatured or other non-potable alcohol serves to exempt individuals who become intoxicated as the result of alcohol that is unfit to drink as a beverage from prosecution for OVUII.

The enacting clause of the OVUII offense, HRS § 291E-61(a)(1), uses the phrase "[w]hile under the influence of alcohol[,]" but the exception itself is found in a separate section, HRS § 291E-1.  Thus, an argument can be made that the exception does not appear in the enacting clause and therefore is a "defense" and not an "element" under the Nobriga framework.  See Lee, 90 Hawai‘i at 138, 976 P.2d at 452 (holding, under the Nobriga framework, that an exception was not contained in the enacting clause when the section containing the exception was cited in the enacting clause ("[e]xcept as provided in section 431:10C-105"), but the terms of the exception were not articulated in the enacting clause).

However, we need not determine whether the statutory exception is embodied in the enacting clause in this case.  In Nobriga, we explained that even when embodied in the enacting clause, a statutory exception constitutes a defense to a criminal offense "when the facts hypothesized in the exceptive provision are peculiarly within the knowledge of the defendant, or the evidence concerning them is within the defendant's private control."  Nobriga, 10 Haw. App. at 358, 873 P.2d at 113

---

[1] For purposes of determining the sufficiency of a charge, the Hawai‘i Supreme Court has considered the elements of an offense to be "(1) conduct; (2) attendant circumstances; and (3) results of conduct."  State v. Mita, 124 Hawai‘i 385, 391, 245 P.3d 458, 464 (2010).

[2] Dictionary.com, http://dictionary.reference.com//browse/potable (defining "potable") (last accessed Feb. 24, 2015).

(internal quotation marks and citation omitted). Whether a defendant's alcohol intoxication and impairment are attributable to alcohol unfit to drink as a beverage, which falls within the statutory exception for denatured or other non-potable alcohol, concern facts that are peculiarly within the defendant's knowledge and evidence within the defendant's private control. See Jenkins, 93 Hawai'i at 107, 997 P.2d at 33 (holding that whether the defendant did or did not possess a hunting license was a fact peculiarly within the defendant's knowledge, and therefore, the statutory exception to the "place to keep" offense pertaining to individuals with a hunting license constituted a defense).

Moreover, the Legislature's evident purpose in making it a crime to drive while impaired by alcohol was to prevent and deter deaths, injuries, and property damage caused by drunk drivers. See State v. Won, 134 Hawai'i 59, 63, 332 P.3d 661, 665 (App. 2014); State v. Cummings, 101 Hawai'i 139, 146, 63 P.3d 1109, 1116 (2003) (Moon, C.J., dissenting) (noting that the obvious purpose of drunk driving statutes is "to prevent people from driving unsafely due to an alcohol-induced diminished capacity" (internal quotation marks and citation omitted)).[9] Unless a defendant specifically disclosed the type of alcohol he or she consumed, it would be extremely difficult, if not impossible, for the prosecution to prove in its case in chief the type of alcohol the defendant consumed. Furthermore, the cases in which a defendant's alcohol intoxication is due to alcohol falling within the statutory exception for denatured or other non-potable alcohol would appear to be quite rare. Accordingly, it would be absurd and contrary to the Legislature's purpose in criminalizing drunk driving to construe the exception for

---

[9] In support of legislation enacted to establish a felony offense for habitual OVUII and to lower the blood alcohol concentration threshold from .10 to .08, the Senate Judiciary Committee stated that it "believes vigorous enforcement, together with education and public awareness, provides the key to reducing the number of alcohol-related accidents and deaths on our highways." S. Stand. Comm. Rep. No. 1265, in 1995 Senate Journal, at 1301.

8

denatured or other non-potable alcohol to be an element of the OVUII offense, rather than a defense, and thus to require the State to prove in every case that the defendant's intoxication was not due to alcohol falling within the exception. See Lee, 90 Hawai'i at 138, 976 P.2d at 452 (holding that with respect to the offense of driving without insurance, to require the State to disprove the exception for self-insurance, which is likely to be quite rare, in every case would be absurd and would defeat the Legislature's purpose by increasing the difficulty of proving lack of coverage).

C.

Because the statutory exception for denatured or other non-potable alcohol is a "defense" to and not an "element" of the OVUII offense, the State was not required to allege in Turping's OVUII charge that her alcohol impairment was not due to alcohol falling within the exception. See Adams, 64 Haw. at 569, 645 P.2d at 309; HRS § 806-29; see also United States v. Hester, 719 F.2d 1041, 1043 (9th Cir. 1983); United States v. Steele, 147 F.3d 1316, 1319-20 (11th Cir. 1998); State v. Gyenes, 855 P.2d 642, 645 n.3 (Or. Ct App. 1993). We therefore hold that the State's OVUII charge was sufficient.

IV.

A.

Turping cites Wheeler, 121 Hawai'i 383, 219 P.3d 1170 (2009), in support of her argument that the charge was rendered defective by the State's failure to specifically allege the statutory definition of the term "alcohol" that contained the exception for denatured or other non-potable alcohol. Turping's reliance on Wheeler is misplaced.

In Wheeler, the Hawai'i Supreme Court held that an OVUII charge was insufficient for failing to allege the statutory definition of the term "operate," which is defined by HRS § 291E-1 to mean "to drive or assume actual physical control of a vehicle upon a public way, street, road, or highway . . . ." Wheeler, 121 Hawai'i at 391-93, 219 P.3d at 1178-80 (quoting HRS

9

§ 291E-1). The supreme court held that the phrase "upon a public, way, street, road, or highway" in the statutory definition created a locational requirement that constituted an essential element of the offense. Id. The supreme court further held that merely alleging that Wheeler did "operate" a vehicle in Wheeler's charge was insufficient to allege this locational essential element. Id. at 393-96, 219 P.3d at 1180-83. The court explained that unlike the statutory definition, the commonly understood meaning of the term "operate" does not impose a locational requirement or "geographically limit where the conduct must take place." Id. at 394, 219 P.3d at 1181. Accordingly, alleging that the defendant did "operate" a vehicle would not fairly apprise a person of common understanding of the locational essential element in terms that were "unmistakable" or "readily comprehensible." Id.

In State v. Mita, 124 Hawai'i 385, 245 P.3d 458 (2010), the Hawai'i Supreme Court explained that Wheeler was based on two significant factors, neither of which applied in Mita's case. First, the statutory definition of the term "operate" created an additional essential element for the offense. Mita, 124 Hawai'i at 390-91, 245 P.3d at 463-64. Second, the statutory definition of "operate" departed from the term's commonly understood meaning to such an extent that alleging the term "operate" failed to provide fair notice of the additional essential element. Id. Distinguishing Wheeler on these bases, the supreme court held that Mita's charge, which did not allege the definition of "animal nuisance" set forth in a city ordinance, was sufficient. Id. at 391, 245 P.3d at 464.[10] The Mita court concluded that

---

[10] In Mita, the defendant was charged with violating a section of a city ordinance by engaging in "animal nuisance." Mita, 124 Hawai'i at 386-87, 245 P.3d at 459-60. The term "animal nuisance was defined in a separate section of the ordinance. Id. Similar to Turping's argument in this case, Mita objected to the charge, claiming that it failed to give her notice of what type of "animal nuisance" she was being charged with under the ordinance definition of "animal nuisance." Id. at 386, 245 P.3d at 459.

unlike in <u>Wheeler</u>, where the charge "contained a hidden [essential] element," (1) the definition of "animal nuisance" "does not create an additional essential element of the offense"; and (2) "the definition of 'animal nuisance' is consistent with its commonly understood meaning and therefore Mita had fair notice of the offense charged." <u>Id.</u> at 391, 393, 245 P.3d at 464, 466.

The <u>Mita</u> court made clear that <u>Wheeler</u> does not generally require the State to allege the statutory definition of a term used to prescribe an offense for a charge to be sufficient:

> <u>Wheeler</u> does not require that the State provide statutory definitions in every charge which tracks the language of a statute that includes terms defined elsewhere in the code. Requiring the State to do so would render charges unduly complex, in contravention of the policy reflected in [Hawai'i Rules of Penal Procedure] Rule 7(d) that "[t]he charge shall be a plain, concise and definite statement of the essential facts constituting the offense charged." <u>Rather, as this court concluded in Wheeler, the State need only allege the statutory definition of a term when it creates an additional essential element of the offense, and the term itself does not provide a person of common understanding with fair notice of that element</u>.

<u>Id.</u> at 391–92, 245 P.3d at 464–65 (some brackets in original; emphasis added).

B.

<u>Mita</u>, and not <u>Wheeler</u>, is the applicable precedent for this case. As in <u>Mita</u>, and unlike in <u>Wheeler</u>, the statutory definition of the term "alcohol" does not create an additional essential element. The term "alcohol" is part of the attendant circumstance element of "while under the influence of alcohol," which must be proved to establish the OVUII offense. Turping's OVUII charge alleged that she operated a vehicle "while under the influence of alcohol[.]" Therefore, unlike in <u>Wheeler</u>, there was no hidden essential element that the charge failed to disclose. Turping's OVUII charge alleged all the essential elements of the offense.

In addition, as in <u>Mita</u> and unlike in <u>Wheeler</u>, the statutory definition of "alcohol" is consistent with the commonly understood meaning of the term, especially in the context of an offense directed at prohibiting people from driving after consuming alcohol in an amount sufficient to impair their ability to drive. The statutory definition of "alcohol" encompasses and is consistent with the common meaning of "alcohol" as "ethanol [(also called ethyl alcohol)] esp[ecially] when considered as the intoxicating agent in fermented and distilled liquors[;] . . . drink . . . containing ethanol[.]"[11] The OVUII charge against Turping specifically alleged that she operated a vehicle "while under the influence of alcohol in an amount sufficient to impair her normal mental faculties or ability to care for herself and guard against casualty." Accordingly, the State's OVUII charge gave Turping fair notice that she was accused of operating a vehicle after consuming alcohol in an amount sufficient to impair her ability to drive. <u>See</u> <u>Mita</u>, 124 Hawai'i at 391, 245 P.3d at 464.

As previously discussed, the statutory exception for denatured or other non-potable alcohol is a defense that was not required to be alleged in the charge to provide Turping with fair notice of the cause and accusation against her. Indeed, the exception is only implicated in the unusual and anomalous situation in which a person's alcohol intoxication and impairment is attributable to alcohol unfit to drink as a beverage. Turping does not contend that the exception was implicated in her case; she does not contend that she became intoxicated and impaired due to alcohol falling within the exception. We conclude that

_____

[11] <u>Merriam-Webster's Collegiate Dictionary</u> 27, 397 (10th ed. 2000) (definition of "alcohol" and "ethanol"); <u>see</u> Dictionary.com, http://dictionary.reference.com//browse/alcohol (defining "alcohol" as "ethyl alcohol . . . the active principle of intoxicating drinks[;] . . . a drink or drinks containing this substance" (British Dictionary definition) (last accessed Feb. 24, 2015).

Turping's challenge to the sufficiency of her OVUII charge is without merit.

CONCLUSION

We affirm the District Court's Judgment.

On the briefs:

Ryan A. Ha
Deputy Public Defender
for Defendant-Appellant

Brian R. Vincent
Deputy Prosecuting Attorney
City and County of Honolulu
for Plaintiff-Appellee

*Craig H. Nakamura*

*Daniel R. Foley*

13