FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER

Electronically Filed
Intermediate Court of Appeals
CAAP-14-0001302
27-JAN-2016
11:02 AM

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---o0o---

STATE OF HAWAI'I, Plaintiff-Appellee,
v.
LESTER S. TSUJIMURA, Defendant-Appellant

CAAP-14-0001302

APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
'EWA DIVISION
(CASE NO. 1DTA-14-00512)

JANUARY 27, 2016

NAKAMURA, CHIEF JUDGE, AND FUJISE AND LEONARD, JJ.

OPINION OF THE COURT BY NAKAMURA, C.J.

Plaintiff-Appellee State of Hawai'i (State) charged Defendant-Appellant Lester S. Tsujimura (Tsujimura) with operating a vehicle under the influence of an intoxicant (OVUII), in violation of Hawaii Revised Statutes (HRS) § 291E-61(a)(1) and

(a)(4) (Supp. 2015).[1]  Prior to trial, the State informed the District Court of the First Circuit (District Court)[2] that it was only proceeding on the HRS § 291E-61(a)(1) portion of the charge. After a bench trial, the District Court found Tsujimura guilty of OVUII, in violation of HRS § 291E-61(a)(1).  The District Court sentenced Tsujimura to a fine of $300, revoked his driver's license for one year, required him to obtain a substance abuse assessment and complete a fourteen-hour substance abuse rehabilitation program, and imposed various fees and assessments. The District Court entered its Judgment on October 21, 2014.

On appeal, Tsujimura contends: (1) the OVUII charge was deficient for failing to define the term "alcohol"; (2) the District Court erred in admitting Officer Thomas Billins' testimony regarding Tsujimura's performance on standardized field sobriety tests; (3) Officer Billins' testimony that Tsujimura did not say he would have difficulty exiting the car due to his prior leg injury constituted an impermissible comment on Tsujimura's assertion of his right to remain silent; (4) there was insufficient evidence that Tsujimura had consumed "alcohol" as defined by HRS § 291E-1 (2007) because the State did not prove that any alcohol he consumed was the product of distillation; and (5) there was insufficient evidence that Tsujimura was under the

---

[1] HRS § 291E-61(a) provides:

(a) A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:

(1)  While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty;

(2)  While under the influence of any drug that impairs the person's ability to operate the vehicle in a careful and prudent manner;

(3)  With .08 or more grams of alcohol per two hundred ten liters of breath; or

(4)  With .08 or more grams of alcohol per one hundred milliliters or cubic centimeters of blood.

[2] The Honorable Paul B.K. Wong presided.

influence of alcohol in an amount sufficient to impair his normal mental faculties or ability to care for himself and guard against casualty. We affirm.

BACKGROUND

Officer Billins was on duty in a "blue-and-white" police vehicle when he observed Tsujimura driving on the Moanalua Freeway. Officer Billins was following Tsujimura's vehicle, a white SUV, which was in the right-most lane of the highway. Officer Billins observed Tsujimura's SUV enter the right shoulder of the highway, straddle the solid white line that divides the shoulder from the right lane so that the white line was in the middle of Tsujimura's SUV, then return to the right lane. Officer Billins saw Tsujimura's SUV engage in such action several times. Officer Billins activated his strobe lights and then used several types of sirens in an attempt to get Tsujimura to pull over. When Tsujimura did not respond to the strobe lights and sirens, Officer Billins used his PA system to verbally direct Tsujimura to pull over. Tsujimura eventually slowed down and stopped his vehicle on the right shoulder of the road.

Upon approaching and speaking with Tsujimura, Officer Billins observed that Tsujimura had "a very flush red face[,]" his speech was slurred, he had red, watery eyes, and an odor of an alcoholic type beverage was being emitted from his breath and his vehicle. Officer Billins administered a series of field sobriety tests to Tsujimura. Prior to participating in the tests, Tsujimura informed Officer Billins that Tsujimura had an old injury to his left knee, "[s]omething about his ACL and it was a bad knee[,]" and that he was taking medication for high blood pressure and diabetes. Officer Billins did not see Tsujimura "limping or anything like that" when Tsujimura exited his SUV.

While administering the horizontal gaze nystagmus test, Officer Billins noticed that Tsujimura swayed slightly from left to right. During the walk-and-turn test, Tsujimura twice failed to maintain the initial heel-to-toe stance; stepped off line five times; failed to walk in a heel-to-toe fashion on all steps;

raised his arms contrary to Officer Billins' instructions; and in making his turn, stumbled backwards and had to raise his arms for balance. During the one-leg stand test, Tsujimura was unable to keep his foot six inches above the ground; he put his foot down on several occasions in the first ten seconds; he did not raise his foot off the ground in the last ten seconds; he did not follow Officer Billins' instruction to count after several prompts to begin counting; and "he was unable to maintain his hands down at his side."

DISCUSSION

We resolve Tsujimura's arguments on appeal as follows:

I.

A.

We reject Tsujimura's claims that: (1) the OVUII charge was deficient for failing to define the term "alcohol" and (2) there was insufficient evidence that Tsujimura had consumed "alcohol" as defined by HRS § 291E-1 (2007). Both claims are based on the same erroneous premise -- that the definition of alcohol for purposes of HRS Chapter 291E only includes alcohol that is the product of distillation, such as distilled liquor, and does not include beer or wine, which are not produced through distillation. Contrary to Tsujimura's contention, the statutory definition of alcohol is not limited to alcohol that is the product of distillation, but also specifically includes ethyl alcohol, which is "the intoxicating agent in beer, wine and other fermented and distilled liquors[.]" Webster Dictionary, http://www.webster-dictionary.net/definition/ethyl alcohol (last accessed Jan. 26, 2016).

As used in HRS Chapter 291E, unless the context otherwise requires, the term "alcohol" is defined as follows:

> "Alcohol" means the product of distillation of any fermented liquid, regardless of whether rectified, whatever may be the origin thereof, <u>and includes ethyl alcohol</u>, lower aliphatic alcohol, and phenol as well as synthetic ethyl alcohol, but not denatured or other alcohol that is considered not potable under the customs laws of the United States.

HRS § 291E-1 (emphasis added). The plain language of HRS

4

§ 291E-1 defines the term alcohol to specifically include "ethyl alcohol." "Ethyl alcohol" (also known as "ethanol") is defined as "the organic compound C2H5OH, which is the intoxicating agent in beer, wine, and other fermented and distilled liquors[.]" Webster Dictionary, http://www.webster-dictionary.net/definition/ethyl alcohol (last accessed Jan. 26, 2016); see Dictionary.com, http://dictionary.reference.com//browse/alcohol (stating that "alcohol" is also called "ethyl alcohol" and "ethanol" and defining "alcohol" as "the active principle of intoxicating drinks . . . Formula: C2H5OH[;] [and] . . . a drink or drinks containing this substance" (British Dictionary definition)) (last accessed Jan. 26, 2016). Accordingly, Tsujimura's claim that the definition of alcohol is restricted to alcohol produced by distillation, and does not include beer or wine, is without merit.

Moreover, Tsujimura's interpretation of the statutory definition of "alcohol" as excluding beer and wine would lead to absurd results. The obvious purpose of the Legislature "in making it a crime to drive while impaired by alcohol was to prevent and deter deaths, injuries, and property damage caused by drunk drivers." State v. Turping, 136 Hawai'i 333, 337, 361 P.3d 1236, 1240 (2015), cert. denied, No. SCWC-13-0002957 (May 20, 2015); see State v. Cummings, 101 Hawai'i 139, 146, 63 P.3d 1109, 1116 (2003) (Moon, C.J., dissenting) (noting that the obvious purpose of drunk driving statutes is "to prevent people from driving unsafely due to an alcohol-induced diminished capacity" (internal quotation marks and citation omitted). Given this purpose, it would make no sense to exclude drivers who became drunk as the result of consuming beer or wine from the scope of the prohibition against drunk driving. We decline to interpret the statutory definition of alcohol (as advocated by Tsujimura) in a manner that would undermine the Legislature's purpose and lead to the absurd result that drivers who became drunk as the result of consuming beer or wine would not be subject to prosecution. See State v. McKnight, 131 Hawai'i 379, 389-90, 319

P.3d 298, 308-90 (2013) (construing a criminal statute in a manner that avoided an absurd result); Keliipuleole v. Wilson, 85 Hawai'i 217, 221-22, 941 P.2d 300, 304-05 (1997) ("[A] rational, sensible and practical interpretation of a statute is preferred to one which is unreasonable or impracticable, because the legislature is presumed not to intend an absurd result, and legislation will be construed to avoid, if possible, inconsistency, contradiction, and illogicality." (internal quotation marks, citation, and brackets omitted); State v. Ogata, 58 Haw. 514, 518, 572 P.2d 1222, 1225 (1977) ("[E]ven where there is no ambiguity, a departure from the literal application of statutory language will be justified if such literal application will lead to absurd consequences."); HRS § 1-15(2) (2009) ("When the words of a law are ambiguous: . . . (2) The reason and spirit of the law, and the cause which induced the legislature to enact it, may be considered to discover its true meaning.").[3/]

B.

We conclude that the statutory definition of "alcohol," which includes "ethyl alcohol" (also known as "ethanol"), "is consistent with the commonly understood meaning of the term ["alcohol"], especially in the context of an offense directed at prohibiting people from driving after consuming alcohol in an amount sufficient to impair their ability to drive." Turping, 136 Hawai'i at 339; 361 P.3d at 1242. "The statutory definition of 'alcohol' encompasses and is consistent with the common meaning of 'alcohol' as '[(a)] ethanol [(also called ethyl alcohol)] esp[ecially] when considered as the intoxicating agent

---

[3/] Tsujimura's interpretation would undermine the entire administrative and criminal statutory scheme set forth in HRS Chapter 291E by essentially requiring proof of the specific type of alcoholic beverage a drunk driver consumed before administrative or criminal penalties could be imposed. It is not clear whether it is even possible to distinguish between alcohol that is the product of distillation and alcohol from beer or wine in determining the alcohol concentration in a person's breath or blood. If such distinction cannot be made, then Tsujimura's claim, if taken to its logical conclusion, would mean, that the State could not establish a violation of HRS § 291E-61(a)(3) or HRS § 291E-61(a)(4) by the results of a breath or blood test.

in fermented and distilled liquors[;] [and (b) a] drink . . . containing ethanol[.]'" Id. (some brackets in original; footnote omitted) (quoting Merriam-Webster's Collegiate Dictionary 27 (10th ed. 2000) (definition of "alcohol")); see Dictionary.com, http://dictionary.reference.com//browse/alcohol (defining "alcohol" as "the active principle of intoxicating drinks . . . Formula: C2H5OH[;] [and] . . . a drink or drinks containing this substance" (British Dictionary definition)) (last accessed Jan. 26, 2016). Accordingly, there was no need for the State to define the term "alcohol" in the OVUII charge in order to give Tsujimura fair notice of the charge against him, and we reject Tsujimura's claim that his OVUII charge was deficient for failing to define the term "alcohol."

We also reject Tsujimura's claim that there was insufficient evidence to prove that he consumed alcohol as defined by HRS § 291E-1. As noted, this claim is based on Tsujimura's erroneous interpretation of the statutory definition of alcohol, which Tsujimura believes required the State to prove that he was under the influence of a particular type of alcohol, namely, alcohol that was the product of distillation. However, the statutory definition of alcohol encompasses and permitted the State to prove that Tsujimura was under the influence of ethyl alcohol, the intoxicating agent in beer, wine, and other fermented and distilled liquors and the active principle in intoxicating drinks. Tsujimura does not contend that there was insufficient evidence to prove that he was under the influence of ethyl alcohol. Among other things, the State introduced evidence that there was an odor of an alcoholic type beverage being emitted from Tsujimura's breath and SUV and that he exhibited other signs of being under the influence of alcohol, including slurred speech; red, watery eyes; impaired driving; inattentiveness; and difficulty performing field sobriety tests. When viewed in the light most favorable to the State, see State v. Richie, 88 Hawai'i 19, 33, 960 P.2d 1227, 1241 (1998), we

7

conclude that there was sufficient evidence that Tsujimura had consumed alcohol as defined by HRS § 291E-1.

II.

Tsujimura contends that the District Court erred in admitting Officer Billins' testimony regarding Tsujimura's performance on standardized field sobriety tests. We disagree.

The District Court did not permit Officer Billins to testify about Tsujimura's performance on the horizontal gaze nystagmus (HGN) test, sustaining Tsujimura's lack of foundation objection to such testimony.[4] The District Court also did not mention any testimony by Officer Billins regarding Tsujimura's performance on the HGN test in support of its verdict. Thus, Tsujimura's claim that the District Court erred with respect to any testimony by Officer Billins regarding his administration of the HGN test is without merit.

In State v. Ferrer, 95 Hawai'i 409, 23 P.3d 744 (App. 2001), this court distinguished between an officer's testimony on a defendant's performance on the HGN test and an officer's testimony on a defendant's performance on psychomotor field sobriety tests (FSTs), namely, the walk-and-turn and one-leg-stand tests. We noted that it is generally recognized that "the foundational requirements for admission of psychomotor FST evidence differ from the foundational requirements for admission of HGN evidence." Ferrer, 95 Hawai'i at 425, 23 P.3d at 760. We explained that "[b]ecause the evidence procured by administration of psychomotor FSTs is within the common experience of the ordinary citizen, the majority of courts that have addressed the issue generally consider psychomotor FSTs to be nonscientific

_____

[4] Officer Billins was permitted to testify that he noticed that Tsujimura swayed slightly from left to right while Officer Billins was administering the HGN test. This testimony did not refer to Tsujimura's performance on the HGN test, but rather Officer Billins' observations of Tsujimura's physical movements.

evidence." Id. 5/ We quoted with approval, the following statement set forth in State v. Meador, 647 So.2d 826, 831 (Fla. Dist. Ct. App. 1996):

> A defendant's ability to perform these simple psychomotor tasks is within a juror's common experiences and understanding. There are objective components of the field sobriety exercises, which are commonly understood and easily determined, such as whether a foot is on the line or not. Jurors do not require any special expertise to interpret performance of these tasks. Thus, evidence of the police officer's observations of the results of defendant's performing the walk-and-turn test [and] the one-leg[-]stand test . . . should be treated no differently than testimony of lay witnesses (officers, in this case) concerning their observations about the driver's conduct and appearance.

Ferrer, 95 Hawai'i at 426-27, 23 P.3d at 761-62 (brackets and ellipsis points in original).

In Ferrer, we concluded that because "psychomotor FSTs are nonscientific in nature[,] . . . an arresting officer may be permitted to testify as to his or her physical observations about a[n OVUII] arrestee's performance on such tests and to give an opinion, based on such observations, as to whether the arrestee was intoxicated when arrested." Id. at 427, 23 P.3d at 762. In other words, an officer, based on the officer's personal observations, can testify about an OVUII arrestee's performance on psychomotor FSTs and can provide a lay opinion about the arrestee's sobriety based on the officer's observations. Although we permitted such testimony regarding the officer's observations of an OVUII arrestee's performance on the psychomotor FSTs, we further concluded that "an arresting officer may not, without a proper foundation being laid, testify that,

_____

5/ In contrast, we recognized that "HGN testing is based on a scientific principle not generally known by lay jurors," and we required that before HGN test results can be admitted into evidence, the State must lay a foundation that (1) the officer administering the test was duly qualified to conduct the test and grade the test results and (2) the test was administered properly. Ferrer, 95 Hawai'i at 422-23, 23 P.3d at 757-58.

in his or her opinion, a[n OVUII] arrestee 'failed' the FSTs."
Id. [6/]

Here, Officer Billins did not testify or render an
opinion that Tsujimura failed the psychomotor FSTs. Instead,
Officer Billins testified about his personal observations of
Tsujimura's actions and movements in performing the psychomotor
FSTs. Officer Billins' testimony regarding Tsujimura's
performance on the psychomotor FSTs was the type of testimony we
held in Ferrer was permissible based on an officer's personal
observations. We conclude that District Court did not err in
allowing this testimony.

### III.

Tsujimura's claim that the District Court permitted
testimony by Officer Billins that constituted an impermissible
comment on Tsujimura's assertion of his right to remain silent is
without merit.[7/]

Because an accused has the constitutional right to
remain silent, the government may not use the accused's exercise
of this privilege against him or her. State v. Mainaaupo, 117
Hawai'i 235, 252, 178 P.3d 1, 18 (2008). Thus, a prosecutor
cannot use the defendant's exercise of his or her right to remain
silent to imply that the defendant is guilty, i.e., that an
innocent person would not have remained silent. See id. at 253-
55, 178 P.3d at 19-21.

---

[6/] In order for an officer to testify that the arrestee "failed" FSTs,
the State is required to lay a foundation which includes that the officer had
received specific training in the administration of the procedures for the
FSTs and the grading of their results. See State v. Toyomura, 80 Hawai'i 8,
26, 904 P.2d 893, 911 (1995).

[7/] We note that Officer Billins' testimony that Tsujimura challenges
refers to Officer Billins' pre-arrest interaction with Tsujimura. "[C]ourts
are divided on whether the government may comment on a defendant's pre-arrest
silence[,]" State v. Mainaaupo, 117 Hawai'i 235, 252 n.9, 178 P.3d 1, 18 n.9
(2008), and Hawai'i has apparently not yet decided this issue. We need not
reach this issue because even assuming arguendo that the government may not
comment on a defendant's pre-arrest silence, Officer Billins did not comment
on Tsujumua's exercise of his right to remain silent.

The standard for determining whether the prosecution has impermissibly commented on the defendant's failure to testify at trial is "whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." State v. Padilla, 57 Haw. 150, 158, 552 P.2d 357, 362 (1976) (internal quotation marks and citation omitted). In State v. Smith, 106 Hawai'i 365, 375, 105 P.3d 242, 252 (App. 2004), we applied the same test in determining whether questioning by the prosecution constituted an impermissible comment on the defendant's exercise of his right to remain silent after being arrested and advised of his Miranda rights.

In accordance with Smith, we apply the test set forth in Padilla to evaluate Tsujimura's claim. The question therefore becomes whether the prosecutor's redirect examination of Officer Billins that Tsujimura challenges "was manifestly intended or was of such character that the [District Court] would naturally and necessarily take it to be a comment on [Tsujimura's exercise of his right to remain silent]." Padilla, 57 Haw. at 158, 552 P.2d at 362 (internal quotation marks and citation omitted). Clearly, the answer to this question is "No."

The context of Officer Billins' testimony is as follows. On direct examination, the Deputy Prosecuting Attorney (DPA) asked Officer Billins about whether Tsujimura had provided any information that would raise questions about Tsujimura's ability to perform the field sobriety tests. Officer Billins testified that Tsujimura informed Officer Billins that Tsujimura had an old injury to his left knee, "[s]omething about his ACL and it was a bad knee[,]" and that he was taking medication for high blood pressure and diabetes. Officer Billins further testified that he did not "see any bandages on [Tsujimura]" and that he did not see Tsujimura "limping or anything like that" when Tsujimura exited his SUV. On cross-examination, defense counsel questioned Officer Billins about Tsujimura's knee injury, suggested that the ACL tear may have been to a different knee

11

than the old left knee injury, and obtained Officer Billins' concession that he had no idea whether Tsujimura's knee injury or ACL injury affected Tsujimura's ability to perform the field sobriety tests.

On redirect examination, the DPA elicited the following testimony:

> [DPA]: Q. . . . You testified that when the defendant left the car he didn't have any difficulty exiting the car.
>
> [Officer Billins]: A. Yes.
>
> [DPA]: Q. So did the defendant at that time explain to you he couldn't get out of the car because of an ACL injury?
>
> [Defense Counsel]: Objection, Your Honor. It comments on defendant's right to remain silent.
>
> THE COURT: It's overruled. Let's see if the statement comes out.
>
> Go ahead and answer the question.
>
> [DPA]: Q. Do you recall if the defendant indicated to you he would have difficulty exiting the car because of his previous leg injury?
>
> [Officer Billins]: A. No statements were made.

Contrary to Tsujimura's contention, Officer Billins' testimony that "No statements were made" by Tsujimura about Tsujimura having difficulty exiting the car because of his previous leg injury did not constitute an impermissible comment on Tsujimura's assertion of his right to remain silent. Indeed, there was no comment at all by Officer Billins about Tsujimura's assertion of the right to remain silent. Examined in context, the DPA's question and Officer Billins' answer were directed at whether there was any indication that Tsujimura's prior knee injury affected his ability to perform the field sobriety tests. The DPA's question and Officer Billins' answer had nothing to do with Tsujimura's exercise of the right to remain silent. There was no attempt to suggest that Tsujimura had refused to answer questions or had sought to invoke the right to remain silent.

12

There was also no attempt to imply that an innocent person in Tsujimura's position would have spoken. Thus, it is clear that the challenged exchange between the DPA and Officer Billins was not "manifestly intended or was of such character that the [District Court] would naturally and necessarily take it to be a comment on [Tsujimura's exercise of his right to remain silent]." See Padilla, 57 Haw. at 158, 552 P.2d at 362 (internal quotation marks and citation omitted).

Furthermore, this was not a jury trial, but a bench trial. "It is well established that a judge is presumed not to be influenced by incompetent evidence." State v. Antone, 62 Haw. 346, 353, 615 P.2d 101, 107 (1980). There is no indication that the District Court was unaware of or ignored the well-established prohibition against drawing negative inferences from a defendant's exercise of his or her right to remain silent.

IV.

Tsujimura contends that there was insufficient evidence to show that he was under the influence of alcohol in an amount sufficient to impair his normal mental faculties or ability to care for himself and guard against casualty. We disagree.

Viewed in the light most favorable to the State, the evidence showed that Tsujimura's driving was impaired by alcohol in that he was unable to keep his SUV within its lane, and instead entered the right shoulder of the highway and straddled the solid line separating the lane from the shoulder on several occasions; Tsujimura was inattentive and did not notice several different attempts by Officer Billins to have Tsujimura pull over; Tsujimura's eyes were red and watery, his speech was slurred, and his breath and SUV emitted an odor of alcohol; and Tsujimura had difficulty performing the psychomotor field sobriety tests. We conclude that the State introduced substantial evidence to support Tsujimura's OVUII conviction.

CONCLUSION

For the foregoing reasons, we affirm the District Court's Judgment.

On the briefs:

Alen M. Kaneshiro
for Defendant-Appellant

Sonja P. McCullen
Deputy Prosecuting Attorney
City and County of Honolulu
for Plaintiff-Appellee

*Craig H. Nakamura*

14