***FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER***

**Electronically Filed
Supreme Court
SCWC-14-0001302
31-MAY-2017
09:07 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

STATE OF HAWAI'I,
Respondent/Plaintiff-Appellee,

vs.

LESTER S. TSUJIMURA,
Petitioner/Defendant-Appellant.

SCWC-14-0001302

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-14-0001302; CASE NO. 1DTA-14-00512)

MAY 31, 2017

McKENNA, POLLACK, AND WILSON, JJ., AND NAKAYAMA, J., CONCURRING
AND DISSENTING, WITH WHOM RECKTENWALD, C.J., JOINS

OPINION OF THE COURT BY POLLACK, J.

It has been settled for decades that the right to

remain silent is a fundamental component of the right against

compelled self-incrimination guaranteed by article I, section 10

of the Hawai'i Constitution.  What has been subject to

disagreement among several jurisdictions is the point in time at

which the right to remain silent attaches. In 2008, this court, in State v. Mainaaupo, 117 Hawaiʻi 235, 178 P.3d 1 (2008), held that the right to remain silent attaches at least as of the time that a person is arrested. In this case, the primary question that we resolve is the one that the Mainaaupo court left open: whether the right to remain silent attaches prearrest and, if so, in what manner and to what extent may prearrest silence be utilized by the State in a criminal trial.[1]

## I. FACTS AND PROCEDURAL BACKGROUND

### A. Pretrial

On February 7, 2014, Lester Tsujimura was charged by complaint with Operating a Vehicle Under the Influence of an Intoxicant (OVUII), in violation of Hawaii Revised Statutes (HRS) § 291E-61(a)(1) and/or (a)(4) (2007 & Supp. 2012).[2]

---

[1]  The secondary issues that we also explore are the statutory meaning of "alcohol" within HRS § 291E-1 and the sufficiency of the complaint in light of that statutory meaning.

[2]  The complaint charged as follows:

> On or about the 15th day of January 2014, in the City and County of Honolulu, State of Hawaii, LESTER S. TSUJIMURA did intentionally, knowingly or recklessly operate or assume actual physical control of a vehicle upon a public way, street, road, or highway while under the influence of alcohol in an amount sufficient to impair his normal mental faculties or ability to care for himself and guard against casualty; and/or did operate or assume actual physical control of a vehicle upon a public way, street, road, or highway with .08 or more grams of alcohol per one hundred milliliters or cubic centimeters of blood, thereby committing the offense of Operating a Vehicle Under the Influence of an Intoxicant, in violation of 291E-61(a)(1) and/or (a)(4) of the Hawaii Revised Statutes.

Tsujimura moved to dismiss the complaint for failure to state an offense, arguing that the complaint was insufficient for failing to define the term "alcohol" and thus did not sufficiently apprise him of what he must be prepared to meet at trial.[3]

At the hearing on the motion,[4] Tsujimura argued that the statutory definition of alcohol includes only alcohol that was produced through distillation, and, as such, the definition must be included in the complaint. The State maintained that the motion to dismiss should be dismissed as untimely. On the merits, the State contended that the definition of "alcohol" also includes ethyl alcohol regardless of origin and that a person of common understanding would understand what "alcohol" means within the OVUII statutory scheme. In reply to the State's timeliness argument, Tsujimura argued that the motion to dismiss for failure to state an offense is jurisdictional and may be raised at any time.

The District Court of the First Circuit (district court) dismissed the motion to dismiss as untimely. Alternatively, the court determined that the statutory

---

[3] Tsujimura also filed a motion to suppress the results of any device that measured his blood alcohol content, evidence gathered post-arrest before he was given Miranda warnings, and all statements he made in violation of his constitutional rights. At the hearing, the State indicated that it was proceeding only on the HRS § 291E-61(a)(1) charge, in response to which Tsujimura withdrew his motion to suppress.

[4] The motion and trial proceedings in this case were presided over by the Honorable Paul B.K. Wong.

definition of alcohol is not restricted to alcohol derived from distillation and that a person of common understanding would understand what alcohol means even if the complaint does not set forth its statutory meaning.  The district court reasoned that even though the plain language of the statutory definition of alcohol appears to include only alcohol produced by distillation, the court would "ignore the plain reading . . . to avoid an absurd result" in which only persons impaired by hard liquor could be prosecuted for OVUII.

### B. Trial

At trial, Officer Thomas Billins of the Honolulu Police Department testified that, on January 15, 2014, at approximately 12:05 a.m., he saw Tsujimura driving a white SUV on the Moanalua Freeway just past the Ala Kapuna overpass.  According to Officer Billins, Tsujimura entered the shoulder lane several times, "at times straddling the . . . right-most lane and the right shoulder."

Officer Billins turned on his light and sirens to notify Tsujimura that he was being stopped, but Tsujimura was not responding, so Officer Billins used the loudspeaker system in his police car to request Tsujimura to pull over.  After Tsujimura stopped, Officer Billins approached to inform him of the reason he was stopped and requested his driver's license, registration, and insurance information.  Tsujimura immediately

produced his driver's license, but he had difficulty producing his registration and insurance information and had to fumble through a stack of documents.

Officer Billins testified that Tsujimura had a very flush red face, his speech was slurred, and he had red and watery eyes. Officer Billins added that he smelled an odor of alcoholic beverage emitting from Tsujimura's breath or from inside the vehicle cabin. The officer related that he requested that Tsujimura participate in standardized field sobriety tests (FSTs), to which Tsujimura agreed. When asked whether he noticed Tsujimura having had any difficulty exiting his vehicle, Officer Billins stated that he did not "see him limping or anything like that," that he got out of his vehicle normally, and that he did not "fall down or anything." Before performing the FSTs, Tsujimura told Officer Billins that he had an old injury to his left knee, "[s]omething about his ACL and it was a bad knee," and that he was taking medication for his high blood pressure and diabetes.[5]

Officer Billins testified that, while he was conducting the horizontal gaze nystagmus test, he observed that Tsujimura's face was flushed and red and that he had a slight

_____

[5] Prior to administering the FSTs, Officer Billins asked Tsujimura six questions: "If [he is] diabetic or epileptic, if [he is] under the care of a doctor or physician, if [he has] an artificial or glass eye, or if [he has] any speech impediments."

sway from left to right.  Over the objection of the defense, Officer Billins testified as to Tsujimura's performance on the walk-and-turn test.[6]  Officer Billins stated that Tsujimura broke his heel-to-toe stance twice, stepped off the line five times, failed to walk in a heel-to-toe fashion on all steps, failed to keep his hands six inches or less from his side, stumbled while turning, and had to raise his arm above shoulder level for balance, all of which did not comply with Officer Billins' instructions and demonstration of the walk-and-turn test.  When asked about Tsujimura's performance of the one-leg stand, Officer Billins stated that Tsujimura was unable to keep his foot six inches above the ground, put his foot down on several occasions, did not raise his foot off the ground in the first ten seconds of the test, was unable to count after several prompts to begin counting, was unable to maintain his hands down at his side, and did not follow instructions.[7]

---

[6]     The objection was based on the fact that even though the district court initially determined that there was insufficient foundation to allow Officer Billins to testify regarding the result of the FSTs, the State essentially "back-doored" testimony as to whether Tsujimura passed or failed the walk-and-turn test because Officer Billins was asked about the clues he was looking for and the instructions he gave based on his training. Tsujimura interjected a similar objection to Officer Billins' testimony as to the results of the one-leg stand.  In light of our disposition in this case, we do not address these foundation challenges that were raised on appeal and certiorari.

[7]     Officer Billins testified that when he had been around persons who had consumed alcohol, he had observed that they tend to have "bloodshot eyes or they have difficulty walking or standing still in an upright manner," they "sometimes pass out," "have emotional issues," "go from being happy to sad," stumble around, or have "difficulty grabbing things or even walking."

(continued . . .)

Officer Billins also testified that, having been apprised of Tsujimura's injury to his left knee, he suggested, during the one-leg stand, that "if [Tsujimura] were to choose a leg, it may be wise to lift his injured leg because he would have to put weight on the leg that he's standing on."  Officer Billins added that Tsujimura raised his left leg during the one-leg stand.

On cross-examination, Officer Billins stated that he followed Tsujimura's vehicle for about two miles before Tsujimura finally pulled over.  The officer testified that Tsujimura was not changing lanes, was not going over the speed limit, was not slowing down or speeding up, did not follow vehicles too closely, and did not make any inconsistent signals. Officer Billins related that it took Tsujimura only eight seconds to pull over from the time he turned on his sirens and lights.  Officer Billins noted that out of the 24 National Highway Traffic Safety Administration (NHTSA) visual detection clues, Tsujimura exhibited only one--trouble maintaining lane position.[8]  Officer Billins testified that Tsujimura did not

_____

(continued . . . )
On cross-examination, Officer Billins indicated that he did not see Tsujimura lose consciousness, exhibit emotional issues, go from being happy to being sad, laugh or cry inappropriately, stumble, grab something to keep himself upright, or walk into anything.

[8]    Officer Billins testified on redirect examination that the factors listed in the NHTSA manual are not dispositive of intoxication and
(continued . . .)

repeat questions or comments, lean on the vehicle, or provide incorrect information or change his answers.  Officer Billins indicated that red, watery eyes could be caused by a number of factors other than alcohol impairment, such as fatigue and long days at work.  Officer Billins also expressed that, based on his training and experience and the NHTSA, odor of alcohol is a poor indicator of a person's level of impairment and has no bearing on the amount and nature of the alcohol that the person consumed.

Tsujimura's counsel asked Officer Billins about his testimony on direct examination regarding Tsujimura's injury.  According to Officer Billins, Tsujimura stated that he had an injury on the left leg or left knee and a torn ACL on an unspecified leg.  Officer Billins said that, when he recommended that Tsujimura raise his left leg for the one-leg stand, he was not aware "whether raising a leg puts more physical strain on your ACL than keeping it planted" and "whether [Tsujimura's] knee injury or ACL injury affected his ability to perform the" one-leg stand and walk-and-turn.

On redirect examination, the prosecutor asked Officer Billins whether Tsujimura, while exiting his car, explained that he could not get out of the car due to an ACL injury.  The

(continued . . . )
that it is necessary to evaluate their totality and the circumstances under which they arose instead of relying on one single clue.

relevant exchange between the prosecutor and Officer Billins was as follows:

> [Prosecutor:] . . . You testified that when the defendant left the car he didn't have any difficulty exiting the car.
>
> [Officer Billins:] Yes.
>
> [Prosecutor:] <u>So did the defendant at that time explain to you he couldn't get out of the car because of an ACL injury?</u>
>
> [Defense Counsel:] Objection, Your Honor. <u>It comments on the defendant's right to remain silent.</u>
>
> [The Court:] It's overruled. Let's see if the statement comes out.
>
> [Prosecutor:] <u>Do you recall if the defendant indicated to you he would have difficulty exiting the car because of his previous leg injury?</u>
>
> [Officer Billins:] <u>No statements were made.</u>
>
> [Defense Counsel:] And Your Honor, that's exactly what I'm talking about. The Supreme Court -- there's Supreme Court case law that says that the prosecutor cannot comment or elicit testimony that comments on the defendant's right to remain silent. He's under no obligation to speak or say anything to Officer Billins.
>
> [The Court:] That's true here in court.
>
> [Defense Counsel:] Correct.
>
> [The Court:] There's no motion to suppress his statements at the scene of the stop.
>
> [Defense Counsel:] No. I understand that. But during the course of the trial, [the prosecutor's] trying to imply that he had some obligation to tell Officer Billins something . . .
>
> [The Court:] I understand what you're saying. Your objection's overruled.

(Emphases added.)

Tsujimura's objection to the prosecutor's line of questioning was thus based on the ground that the question sought and elicited a response that commented on Tsujimura's

9

right to remain silent. The district court overruled the objection on the grounds that the prosecutor's question was not implying that Tsujimura was under obligation to speak in court, which the district court concluded was inappropriate; rather, the prosecutor's question was implying that Tsujimura had some obligation to say something at the time of the stop, which the district court intimated was permissible.

Following Officer Billins' testimony, the State rested and Tsujimura moved for a judgment of acquittal, arguing that the State failed to present evidence as to the kind of alcohol that allegedly impaired his faculties. The district court denied the acquittal motion, and Tsujimura rested without presenting any evidence.

In ruling on the case, the district court found that the car that Tsujimura was driving was straddling the line separating two lanes on the Moanalua freeway; that the eight seconds it took for Tsujimura to pull over was still a fair amount of time given that the police lights were activated; that Tsujimura's speech was slurred, his face was flushed and red, and his eyes were red and watery; and that when Tsujimura "alighted from the car, he did not indicate any difficulty walking." The district court also made findings consistent with Officer Billins' testimony as to Tsujimura's performance on the FSTs.

Based on the totality of the circumstances, including the manner in which Tsujimura was driving and Tsujimura's physical condition that Officer Billins observed, the district court concluded that the State proved beyond a reasonable doubt all the elements of the OVUII offense charged under HRS § 291E-61(a)(1).[9]

## II. ICA PROCEEDINGS

Tsujimura filed a notice of appeal to the Intermediate Court of Appeals (ICA), challenging the following rulings of the district court: (1) denial of his motion to dismiss the OVUII charge for failure to define the term "alcohol" in the complaint; (2) admission of Officer Billins' testimony regarding Tsujimura's failure to state that his injury would prevent him from getting out of his car; (3) denial of his motion for judgment of acquittal on the grounds that there was insufficient evidence that he had consumed "alcohol"; and (4) denial of his motion for judgment of acquittal on the grounds that there was insufficient evidence to establish that he was under the influence of alcohol in an amount sufficient to impair his

---

[9] The district court sentenced Tsujimura to a 14-hour minimum substance abuse rehabilitation program, a substance abuse assessment, and mandatory fees including "$100 DUI Drivers Education Fee, $7 Regular Drivers Education Fee, $30 Crime Victim Compensation Fee, $25 Neurotrauma Fund Surcharge, $250 Drug Demand Reduction Assessment, $150 of which will be suspended on the condition that Mr. Tsujimura complete all the other requirements of his sentence." Tsujimura was also fined $300, and his license was revoked for one year.

normal mental faculties or ability to care for himself and guard against casualty.

The ICA in its published opinion determined that the statutory definition of "alcohol" under HRS § 291E-1 (2007 & Supp. 2012) is not limited to alcohol derived from distillation but that, based on the statute's plain meaning, it "specifically includes ethyl alcohol, which is 'the intoxicating agent in beer, wine and other fermented and distilled liquors.'" State v. Tsujimura, 137 Hawai'i 117, 120, 366 P.3d 173, 176 (App. 2016) (quoting Ethyl Alcohol, Webster Dictionary, http://www.webster-dictionary.net/definition/ethyl alcohol (last visited May 23, 2017)).[10] The ICA stated that, if the meaning of "alcohol" excludes beer and wine and other alcoholic products not derived from distillation, the purpose of the legislature in enacting the OVUII statutes would be undermined in that "drivers who became drunk as the result of consuming beer or wine would not be subject to prosecution." Id. at 120-21, 366 P.3d at 176-77. The ICA noted that Tsujimura's statutory construction would frustrate "the entire administrative and criminal statutory scheme set forth in HRS Chapter 291E." Id. The ICA also concluded that the statutory definition of "alcohol" is consistent with its ordinarily understood meaning and that

---

[10] In 2016, the legislature amended the definition of "alcohol" in HRS § 291E-1 to mean "ethanol or any substance containing ethanol." 2016 Haw. Sess. Laws Act 231, § 59.

"there was no need for the State to define the term 'alcohol' in the OVUII charge in order to give Tsujimura fair notice of the charge against him." Id. at 121, 366 P.3d at 177. Accordingly, the ICA held that the complaint charging Tsujimura with OVUII was not deficient for failing to set forth the statutory definition of "alcohol." Id.

As to Tsujimura's argument that his right to remain silent was violated, the ICA observed that Hawai'i has not resolved whether there exists a constitutional right to prearrest silence. Id. at 123, 366 P.3d at 179. However, the ICA determined that it was not necessary to reach this issue because Officer Billins' testimony did not constitute "an impermissible comment on Tsujimura's assertion of his right to remain silent." Id. In evaluating Tsujimura's contention, the ICA applied the test set forth in State v. Padilla, 57 Haw. 150, 158 P.2d 357 (1976), and considered whether the prosecutor's question and Officer Billins' answer to it were manifestly intended or of such character that the district court would naturally and necessarily take it to be a comment on Tsujimura's exercise of his right to remain silent. Tsujimura, 137 Hawai'i at 123, 366 P.3d at 179. The ICA reasoned that the question-- "Do you recall if the defendant indicated to you he would have difficulty exiting the car because of his previous leg injury?"--and Officer Billins' answer that "[n]o statements were made"

"were directed at whether there was any indication that Tsujimura's prior knee injury affected his ability to perform the field sobriety tests." Id. at 124, 366 P.3d at 180. According to the ICA, the prosecutor's question and Officer Billins' answer were not an "attempt to imply that an innocent person in Tsujimura's position would have spoken." Id.

Finally, the ICA determined that there was sufficient evidence to establish that Tsujimura consumed "alcohol" because Tsujimura was under the influence of ethyl alcohol, which is the intoxicating agent in beer, wine, and other fermented and distilled liquors and the active principle in intoxicating drinks. Id. at 122, 366 P.3d at 178. Therefore, viewing the evidence in the light most favorable to the State, the ICA concluded that the evidence adduced by the State at trial constituted sufficient evidence to support Tsujimura's conviction. Id. at 124, 366 P.3d at 180.

### III. STANDARDS OF REVIEW

Statutory interpretation is reviewed de novo. State v. Wang, 91 Hawai'i 140, 141, 981 P.2d 230, 231 (1999). "At all times, the question of whether a charge is sufficient is a matter of constitutional law, and our review of such matters is de novo." Schwartz v. State, 136 Hawai'i 258, 286, 361 P.3d 1161, 1189 (2015). As to evidentiary rulings, the standard of review is "abuse of discretion, unless application of the rule

admits only one correct result, in which case, review is under a right/wrong standard." State v. Rabellizsa, 79 Hawai'i 347, 349, 903 P.2d 43, 45 (1995). Questions of constitutional law are reviewed de novo, and this court exercises its independent judgment in considering such questions. State v. Mattson, 122 Hawai'i 312, 321, 226 P.3d 482, 491 (2010). Legal sufficiency of the evidence to support a conviction is a question of law reviewed by this court de novo, the specific test being "whether, 'viewing the evidence in the light most favorable to the State, there is substantial evidence to support the conclusion of the trier of fact.'" State v. Hirayasu, 71 Haw. 587, 589, 801 P.2d 25, 26 (1990) (quoting State v. Hernandez, 61 Haw. 475, 477, 605 P.2d 75, 77 (1980)).

## IV. DISCUSSION

### A. Meaning of Alcohol and Sufficiency of the Complaint

Tsujimura contends that the statutory definition of "alcohol" in HRS § 291E-1 (2007 & Supp. 2012) is limited to alcohol derived from distillation. Thus, argues Tsujimura, the definition of "alcohol" should have been included in the complaint.

### 1. The Meaning of Alcohol

Statutory construction commences "with an examination of the plain language in order to determine and give effect to the legislative intent and purpose underlying the statute."

15

State v. Pacquing, 139 Hawai'i 302, 310, 389 P.3d 897, 905 (2016). "The legislature is presumed not to intend an absurd result, and legislation will be construed to avoid, if possible, inconsistency, contradiction[,] and illogicality." State v. Arceo, 84 Hawai'i 1, 19, 928 P. 2d 843, 861 (1996) (quoting State v. Malufao, 80 Hawai'i 126, 137, 906 P.2d 612, 623 (1995)). Invariably, this court's foremost obligation in statutory interpretation is to effectuate the statute's purpose. State v. Ganal, 81 Hawai'i 358, 371, 917 P.2d 370, 383 (1996).

> HRS § 291E-1 defines alcohol as
>
>> the product of distillation of any fermented liquid, regardless of whether rectified, whatever may be the origin thereof, and includes ethyl alcohol, lower aliphatic alcohol, and phenol as well as synthetic ethyl alcohol, but not denatured or other alcohol that is considered not potable under the customs laws of the United States.

(Emphasis added.) Contrary to Tsujimura's contention, the statutory meaning of "alcohol" is not circumscribed to alcohol derived from distillation. Tsujimura's proffered interpretation overlooks the conjunctive clause "and includes" in the statutory definition. Previous cases counsel that "'including' means either 'an enlargement and has the meaning of and or in addition to, or merely specifies a particular thing already included within the general words theretofore used.'" State v. Guyton, 135 Hawai'i 372, 379 n.14, 351 P.3d 1138, 1145 n.14 (2015)

16

(quoting Hawaiian Ass'n of Seventh-Day Adventists v. Wong, 130 Hawai'i 36, 46, 305 P.3d 452, 462 (2013)).

In this case, because "and" precedes "includes," the phrase "and includes" means "in addition to" instead of merely specifying particular examples of "product of distillation." Viewed another way, the second definitional clause following "and includes" is separate and distinct from the first definitional clause ending with the word "thereof." Accordingly, "alcohol" means "the product of distillation of any fermented liquid, regardless of whether rectified, whatever may be the origin thereof." And "alcohol" also "includes ethyl alcohol, lower aliphatic alcohol, and phenol as well as synthetic ethyl alcohol" regardless of whether they are products of distillation.

To be sure, in cases where a general definitional clause is followed by a list prefaced by the word "including," this court has held that the list provides examples that particularize or elaborate upon the general definitional clause. Pacquing, 139 Hawai'i at 319—20, 389 P.3d at 914—15. In such cases, the general definitional clause is treated as providing the outer limits of the meaning of the defined term, and the list that follows "including" is regarded as non-exhaustive examples of the general definitional clause. Lealaimatafao v.

Woodward-Clyde Consultants, 75 Hawai'i 544, 556, 867 P.2d 220, 226 (1994).

But here, by using the phrase "and includes," the legislature clearly disassociated the first definitional clause from the second definitional clause. "[E]thyl alcohol, lower aliphatic alcohol, and phenol as well as synthetic ethyl alcohol" are not illustrative of or circumscribed by the phrase "the product of distillation," and instead, they qualify as "alcohol" within HRS § 291E-1 even if they are not a product of distillation. Hence, the meaning of "alcohol" is inclusive of ethyl alcohol, also commonly known as ethanol, which "is the intoxicating agent in beer, wine, and other fermented and distilled liquors."[11] Accordingly, the statutory definition of "alcohol" includes beer, wine, and other fermented liquors because these substances contain ethanol.[12]

This interpretation is consistent with the purpose of the legislature in enacting the OVUII statutes: to promote public safety by making it a crime to operate a vehicle while impaired by an intoxicant. See, e.g., H. Stand. Comm. Rep. No. 788-82, in 1982 House Journal, at 1261 (noting that the 1982 amendments sought to balance and weigh "the need of protecting

---

[11]    Ethyl Alcohol, Webster Dictionary, http://www.webster-dictionary.org/definition/ethyl%20alcohol (last visited May 23, 2017).

[12]    Id.

our citizens against the danger of drunken drivers and, at the same time, insuring that the measures adopted to curb drunken driving do not discriminate against any class of our society"). Tsujimura's interpretation, which would exclude from OVUII prosecution persons impaired by alcohol not derived from distillation, would lead to a result that undermines the legislative purpose. This illogical result is avoided by effectuating the plain language of the statutory definition of "alcohol," which includes ethyl alcohol regardless of origin or derivation. Pac. Ins. v. Or. Auto Ins., 53 Haw. 208, 211, 490 P.2d 899, 901 (1971). Thus, the ICA reached the correct result in holding that "alcohol" is not limited to alcohol produced through distillation; however, this result is chiefly dictated by the plain language of HRS § 291E-1.

## 2. Sufficiency of the Complaint

Tsujimura argues that the complaint should be dismissed as insufficient because the State failed to include the statutory definition of "alcohol," depriving him of his state constitutional right to be apprised of what he must defend against. "Article 1, section 14 of the Hawaiʻi Constitution . . . require[s] that '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation[.]'" State v. Wells, 78 Hawaiʻi 373, 379, 894 P.2d 70, 76 (1995) (alterations in original). It is

settled law that an "accusation must sufficiently allege all of the essential elements of the offense charged," a requirement that "obtains whether an accusation is in the nature of an oral charge, information, indictment, or complaint." State v. Jendrusch, 58 Haw. 279, 281, 567 P.2d 1242, 1244 (1977).

This court has noted that "[w]here the statute sets forth with reasonable clarity all essential elements of the crime intended to be punished, and fully defines the offense in unmistakable terms readily comprehensible to persons of common understanding, a charge drawn in the language of the statute is sufficient." Id. at 282, 567 P.2d at 1245; accord State v. Wheeler, 121 Hawai'i 383, 393, 219 P.3d 1170, 1180 (2009). But "where the definition of an offense . . . includes generic terms, it is not sufficient that the indictment shall charge the offense in the same generic terms as in the definition; . . . it must state the species . . . [and] descend to particulars." State v. Israel, 78 Hawai'i 66, 73, 890 P.2d 303, 310 (1995) (quoting Russell v. United States, 369 U.S. 749, 765 (1962)); accord Wheeler, 121 Hawai'i at 393, 219 P.3d at 1180.

In this case, Tsujimura was charged by complaint with being "under the influence of alcohol in an amount sufficient to impair his normal mental faculties or ability to care for himself and guard against casualty." As discussed, the

statutory meaning of alcohol is not limited to alcohol produced by the process of distillation.  The commonly understood meaning of "alcohol" is that it is "a clear liquid that has a strong smell, that is used in some medicines and other products, and that is the substance in liquors (such as beer, wine, or whiskey) that can make a person drunk."[13]  The statutory meaning of "alcohol" includes ethyl alcohol, which is the intoxicating agent in beer, wine, and other fermented and distilled liquors.  Thus, "alcohol," as defined by statute, encompasses substances and beverages commonly understood to constitute "alcohol" in lay terms.  Accordingly, it was not necessary to include the statutory definition of "alcohol" in the complaint against Tsujimura because the statutory definition "comport[s] with [the] commonly understood definition" of alcohol.  Wheeler, 121 Hawaiʻi at 394, 219 P.3d at 1181.  Thus, even without the statutory definition of "alcohol," the complaint "fully defines the offense in unmistakable terms," is "readily comprehensible to persons of common understanding," and is, therefore, sufficient.  Jendrusch, 58 Haw. at 282, 567 P.2d at 1245.

---

[13]  Alcohol, Merriam-Webster, http://www.merriam-webster.com/dictionary/alcohol (emphasis added) (last visited May 23, 2017).  Similarly, Oxford Dictionary defines "alcohol" as "[a] colorless volatile flammable liquid that is produced by the natural fermentation of sugars and is the intoxicating constituent of wine, beer, spirits, and other drinks, and is also used as an industrial solvent and as fuel."  Alcohol, English Oxford Living Dictionaries, http://www.oxforddictionaries.com/us/definition/american_english/alcohol (last visited May 23, 2017).

## B. Prearrest Right to Remain Silent

During the State's case-in-chief in the trial in this case, the prosecutor asked Officer Billins on redirect examination, "Do you recall if the defendant indicated to you he would have difficulty exiting the car because of his previous leg injury?" Over defense counsel's repeated objection, the district court permitted Officer Billins to answer the prosecutor's question. The officer responded, "No statements were made." Tsujimura argues that the information elicited by the prosecutor--that he failed to tell Officer Billins that he would have difficulty exiting the car because of his previous leg injury--improperly commented on his right to remain silent.

In reviewing Tsujimura's contention, it is important to identify the timeframe that the prosecutor's question focused on when he asked Officer Billins about what Tsujimura failed to say: it was before Tsujimura was formally arrested or given Miranda warnings. This court has not yet spoken on whether the right to remain silent, which is an integral part of the privilege against compelled self-incrimination, attaches prearrest and, if so, whether and within what bounds such silence may be used against a criminal defendant at trial. See State v. Mainaaupo, 117 Hawai'i 235, 252 n.9, 178 P.3d 1, 18 n.9 (2008) (reasoning that "the [deputy prosecuting attorney]'s comments could also be interpreted to refer to [defendant]'s

pre-arrest silence" but not addressing that issue because it was not raised, and also noting that "courts are divided on whether the government may comment on a defendant's pre-arrest silence").

## 1. Prearrest Right to Remain Silent Under Article I, Section 10 of the Hawai'i Constitution

The United States Supreme Court has not definitively resolved under the federal constitution the issue of whether the privilege against compelled self-incrimination attaches before arrest. Jenkins v. Anderson, 447 U.S. 231, 236 n.2 (1980) ("Our decision today does not consider whether or under what circumstances prearrest silence may be protected by the Fifth Amendment.") The Supreme Court was not required to resolve this issue because its precedents "clearly permit[] impeachment even if the prearrest silence were held to be an invocation of the Fifth Amendment right to remain silent."[14] Id.; Portuondo v.

---

[14] The propriety of utilizing a defendant's silence in criminal trials has been explored by the Supreme Court in several cases. In Doyle v. Ohio, 426 U.S. 610 (1976), the Court held that the prosecution may not impeach a defendant by using his post-arrest, post-Miranda silence, reasoning that a defendant, after being apprised of his or her Miranda right to remain silent, cannot thereafter be penalized for exercising that right. Id. at 611. In Jenkins, the Supreme Court "conclude[d] that the Fifth Amendment is not violated by the use of prearrest silence to impeach a criminal defendant's credibility" because, by testifying at his or her own trial, the defendant "cast[s] aside his cloak of silence" and impeachment is a necessary concomitant of that decision. 447 U.S. at 238. Two years later, the Supreme Court decided Fletcher v. Weir, 455 U.S. 603 (1982), a case in which the defendant, post-arrest, was not given Miranda warnings. "In the absence of the sort of affirmative assurances embodied in the Miranda warnings," the Court held that it is not a violation of "due process of law for a State to permit cross-examination as to postarrest silence when a defendant chooses to take the stand" for the purpose of impeaching the defendant. Id. at 607. In

(continued . . .)

Agard, 529 U.S. 61, 70 (2000) (noting that, under Jenkins, "it was not clear whether the Fifth Amendment protects prearrest silence"). But because this court is "the ultimate judicial tribunal with final, unreviewable authority to interpret and enforce the Hawaiʻi Constitution, [it is] free to give broader protection under the Hawaiʻi Constitution than that given by the federal constitution." State v. Arceo, 84 Hawaiʻi 1, 28, 928 P.2d 843, 870 (1996) (quoting State v. Wallace, 80 Hawaiʻi 382, 397 n.14, 910 P.2d 695, 710 n.14 (1996)); see, e.g., State v. Hoey, 77 Hawaiʻi 17, 36, 881 P.2d 504, 523 (1994) (affording broader protection to suspects during custodial interrogation under the Hawaiʻi Constitution than that provided by the federal constitution). Thus, this court may interpret the Hawaiʻi Constitution to provide broader rights against self-incrimination than its federal counterpart.

In determining whether the right to remain silent attaches before arrest, the governing provision of the Hawaiʻi Constitution is article I, section 10, which provides, "[N]or shall any person be compelled in any criminal case to be a

_____

(continued . . . )
Salinas v. Texas, 133 S. Ct. 2174 (2013) (plurality), prosecutors used the defendant's silence during a pre-custodial interview as substantive evidence of guilt. Id. at 2178—79. A plurality of the Court concluded that, where the defendant does not invoke the right to remain silent in a non-coercive, pre-custodial interview situation, prosecutors could use the defendant's prearrest silence as substantive proof of guilt. Id. at 2184.

witness against oneself." Haw. Const. art. I, § 10. In Mainaaupo, this court held that "the right against self-incrimination attache[s] at least as of the time of [an] arrest," regardless of whether Miranda warnings have been given. 117 Hawaiʻi at 252, 178 P.3d at 18. The Mainaaupo court left open the question of whether the right against self-incrimination attaches before arrest. See id. at 252 n.9, 178 P.3d at 18 n.9 (noting that whether the right against self-incrimination applies to prearrest silence was not an issue and was therefore not addressed).

This court construes the provisions of the Hawaiʻi Constitution using canons similar to those used in statutory construction. "[T]he settled rule is that in the construction of a constitutional provision the words are presumed to be used in their natural sense unless the context furnishes some ground to control, qualify, or enlarge them." Haw. State AFL–CIO v. Yoshina, 84 Hawaiʻi 374, 376, 935 P.2d 89, 91 (1997) (quoting Pray v. Judicial Selection Comm'n, 75 Hawaiʻi 333, 342, 861 P.2d 723, 727 (1993)). The plain language of article I, section 10 provides, "[N]or shall any person be compelled to be a witness against oneself." Haw. Const. art. I, § 10. Unlike those provisions of the Hawaiʻi Constitution that explicitly apply only

to specified categories of individuals,[15] article I, section 10 is clear that its guarantees are meant to attach to "any person."  Cf. United States ex. rel. Savory v. Lane, 832 F.2d 1011, 1017 (7th Cir. 1987) (comparing the language of the Sixth Amendment, which gives the right to counsel to an "accused," with the language of the Fifth Amendment, which states that "[n]o person shall . . . be compelled in any criminal case to be a witness against himself").

Thus, the privilege against compelled self-incrimination functions to protect "any person" regardless of whether that person has been arrested or accused.  It is therefore evident from the language of article I, section 10 that the right to remain silent attaches even before arrest is made.[16]  Cf. id. (holding that the right to remain silent attaches even before arrest and reasoning that, based on the

---

[15]    See, e.g., Haw. Const. art. I, § 14 (enumerating rights that only accrue to individuals that have already been "accused" of a crime).  We voice no opinion regarding the timeframe and manner in which the various rights enumerated in article I, section 14 apply.  We simply note the plain-language difference between article I, section 14 and article I, section 10.

[16]    See also Tortolito v. State, 901 P.2d 387, 390 (Wyo. 1995) (holding that under Wyoming's constitution, there is "no rational reason to limit the protection embracing the citizen's right to silence to the post-arrest or post-Miranda situation.  The constitutional right to silence exists at all times--before arrest, at arrest, and after arrest; before a Miranda warning and after it.  The right is self-executing."); State v. Fencl, 325 N.W.2d 703, 711 (Wis. 1982) ("The Fifth Amendment protects a person from compelled self-incrimination at all times, not just upon arrest or during a custodial interrogation."); see also Coppola v. Powell, 878 F.2d 1562, 1565 (1st Cir. 1989) (holding that the privilege against self-incrimination may be asserted prearrest); United States v. Burson, 952 F.2d 1196, 1200 (10th Cir. 1991) (accord).

language of the U.S. Constitution, "unlike the right to counsel," the right to remain silent "attaches before the institution of formal adversary proceedings").

In confirming the plain-language interpretation of a constitutional provision, the intent underlying its ratification is a relevant consideration. See State v. Rodrigues, 63 Haw. 412, 416, 629 P.2d 1111, 1114 (1981). The purpose of the privilege against self-incrimination is twofold: to protect an individual "from having to reveal, directly or indirectly, his knowledge of facts relating him to the offense or from having to share his thoughts and beliefs with the Government," Doe v. United States, 487 U.S. 201, 213 (1988), and to "demand[] that the government seeking to punish an individual produce the evidence against him by its own independent labors, rather than by the cruel, simple expedient of compelling it from his own mouth," Miranda v. Arizona, 384 U.S. 436, 460 (1966). Accord State v. Grahovac, 52 Haw. 527, 532–33, 480 P.2d 148, 152 (1971).

Establishing that the privilege against compelled self-incrimination attaches to a person even without formal arrest or the institution of criminal proceedings effectuates the purpose underlying the privilege, for it places on the government the onus of producing evidence against individuals that the government intends to punish and correspondingly frees

27

individuals from any obligation to speak.  It is also consistent with the fact that "the right to remain silent derives from the Constitution and not from the Miranda warnings themselves," Mainaaupo, 117 Hawai'i at 252, 178 P.3d at 18 (quoting United States v. Velarde-Gomez, 269 F.3d 1023, 1029 (9th Cir. 2001) (en banc)); accord Roberts v. United States, 445 U.S. 552, 560 (1980), and that, therefore, the privilege against self-incrimination exists even without the articulation of Miranda warnings.[17]

Given that the right to remain silent attaches prearrest pursuant to article I, section 10, we hold that the right clearly attached in this case at least at the point when Tsujimura was detained as a result of the investigatory stop.[18] See State v. Eleneki, 106 Hawai'i 177, 180, 102 P.3d 1075, 1078 (2004) ("It is axiomatic that 'stopping an automobile and detaining its occupants constitutes a "seizure" within the

---

[17]    See State v. Easter, 922 P.2d 1285, 1290–91 (Wash. 1996) ("An accused's right to silence derives, not from Miranda, but from the Fifth Amendment itself.  The Fifth Amendment applies before the defendant is in custody or is the subject of suspicion or investigation."); Fencl, 325 N.W.2d at 711 n.10 ("Nor is the Fifth Amendment right against self-incrimination dependent upon a person's receipt of the Miranda warning.  Miranda did not create new rights but, rather, held that the constitutional guarantees already accorded a defendant by the Fifth and Sixth Amendments should be explained to the defendant during a critical stage of the criminal proceeding.").

[18]    Because this case involves a seizure situation, we express no opinion as to other prearrest situations in which the right to remain silent would be triggered.  We do not reach that issue because it is not implicated in this case.

meaning of the Fourth Amendment to the United States Constitution and Article I, Section 7 of the Hawai'i Constitution, even though the purpose of the stop is limited and the resulting detention quite brief.'" (quoting State v. Powell, 61 Haw. 316, 320, 603 P.2d 143, 147 (1979))). Thus, upon Tsujimura's seizure, his right to remain silent was invoked, and this right continued during his detention.

The question then arises as to whether prearrest silence may be used by the State against a defendant and, if so, within what bounds. As stated, the Supreme Court has held that prearrest silence may be used to impeach a defendant. See Jenkins, 447 U.S. 231; supra note 14. But the Supreme Court has not yet spoken on whether prearrest silence may be used as substantive proof of guilt, and circuit courts of appeals are split over this issue. Several circuits have held that prearrest silence may not be used as substantive proof of guilt. See Coppola v. Powell, 878 F.2d 1562, 1568 (1st Cir. 1989) (by using defendant's prearrest silence in the prosecution's case-in-chief, defendant's Fifth Amendment rights were violated); United States v. Caro, 637 F.2d 869, 876 (2d Cir. 1981) (holding that prearrest silence cannot be used as substantive proof of guilt in the prosecution's case-in-chief); Combs v. Coyle, 205 F.3d 269, 283 (6th Cir. 2000) (concluding that the "use of a defendant's prearrest silence as substantive evidence of guilt

violates the Fifth Amendment's privilege against self-incrimination"); Lane, 832 F.2d at 1017—18 (holding that the use of defendant's prearrest silence as proof of guilt was unconstitutional); United States v. Burson, 952 F.2d 1196, 1201 (10th Cir. 1991) (admitting prearrest silence as substantive evidence of guilt is impermissible under the Fifth Amendment). Other circuits have reached the opposite result, holding that the use of prearrest silence as substantive proof of guilt is constitutionally permissible. See United States v. Zanabria, 74 F.3d 590, 593 (5th Cir. 1996) (use of defendant's prearrest silence as proof of guilt, under the circumstances, did not violate the Fifth Amendment); United States v. Oplinger, 150 F.3d 1061, 1066-67 (9th Cir. 1998) (prearrest silence may be used as evidence of guilt without violating the Fifth Amendment), overruled on other grounds by United States v. Contreras, 593 F.3d 1135 (9th Cir. 2010); United States v. Rivera, 944 F.2d 1563, 1567-68 (11th Cir. 1991) (holding that the government may comment on defendant's prearrest silence because the right against self-incrimination does not attach until after arrest and Miranda warnings have been given). The Supreme Court, in Salinas v. Texas, 133 S. Ct. 2174 (2013) (plurality), left unresolved this split of authority among the federal circuits and held that, even assuming that prearrest silence may not be used as substantive evidence of guilt, the

defendant in that case could not take advantage of that protection because he failed to expressly invoke the right.[19]

Numerous state appellate courts have also taken the position that prearrest silence can be used only to impeach a defendant and not as proof of guilt in the prosecution's case-in-chief. See State v. Reid, 20 A.3d 298, 304 (N.H. 2011) ("A defendant's pre-arrest silence may be used to impeach his credibility, but the use of pre-arrest silence in the State's case-in-chief is unconstitutional."); State v. Brown, 919 A.2d 107, 116—17 (N.J. 2007) (testimony regarding defendant's prearrest silence "would have been appropriate as impeachment evidence if it had been offered in rebuttal" and not in the prosecution's case-in-chief); Tortolito v. State, 901 P.2d 387, 390 (Wyo. 1995) (use of prearrest silence to infer guilt is constitutionally prohibited); State v. Parker, 334 P.3d 806, 821 (Idaho 2014) (same); State v. Easter, 922 P.2d 1285, 1290—92 (Wash. 1996) (same); State v. Rowland, 452 N.W.2d 758, 763 (Neb. 1990) (same); State v. Fencl, 325 N.W.2d 703, 711 (Wis. 1982) (same); State v. Taylor, 780 S.E.2d 222, 224 (N.C. Ct. App.

---

[19]    Salinas, 133 S.Ct. at 2179 ("We granted certiorari to resolve a division of authority in the lower courts over whether the prosecution may use a defendant's assertion of the privilege against self-incrimination during a noncustodial police interview as part of its case in chief. But because petitioner did not invoke the privilege during his interview, we find it unnecessary to reach that question." (citations omitted)); Rinat Kitai-Sangero & Yuval Merin, Probing into Salinas's Silence: Back to the "Accused Speaks" Model?, 15 Nev. L.J. 77, 77—78 (2014) (stating that the plurality opinion in Salinas avoided ruling on whether prearrest silence may be used as substantive proof of guilt "and instead decided the case on a technicality").

2015) (same); State v. Palmer, 860 P.2d 339, 349—50 (Utah Ct. App. 1993) (same).

We agree with the federal circuit courts of appeals and the several States that have held as unconstitutional the use of prearrest silence as substantive evidence of guilt.[20] To hold otherwise would "create an incentive for arresting officers to delay interrogation in order to create an intervening 'silence' that would then be used against the defendant." Mainaaupo, 117 Hawai'i at 252, 178 P.3d at 18 (quoting United States v. Moore, 104 F.3d 377, 386 (D.C. Cir. 1997)); accord Easter, 922 P.2d at 1290—91; Tortolito, 901 P.2d at 390 (permitting the use of prearrest silence as proof of guilt leads to a system where the government "can time the citizen's arrest to occur after the citizen stands mute in the face of the accusation"). Indeed, allowing prearrest silence to be used as proof of guilt "would also encourage the authorities to refrain from issuing Miranda warnings as long as possible in an attempt to generate either inferential evidence of guilt from silence or

_____

[20]    This court need not reach the issue of whether, under the Hawai'i Constitution, a defendant's prearrest silence can be used for impeachment purposes in cases where the defendant chooses to testify because, in this case, Tsujimura's prearrest silence was used as substantive evidence of guilt.  Further, Tsujimura did not testify, so there was never any basis to impeach his credibility by using his prearrest silence.  See Brown, 919 A.2d at 116—17 (because defendant did not testify, the prosecutor's use of defendant's silence could not have been for impeachment); State v. Harrison, 721 S.E.2d 371, 379 (N.C. Ct. App. 2012) (police officer's statement as to defendant's prearrest silence could not have been used for impeachment where the defendant testified after the police officer).

an admission prior to custodial interrogation." Palmer, 860 P.2d at 349—50; accord Easter, 922 P.2d at 1290.

Proscribing the use of prearrest silence that occurs at least as of the time that a person has been detained is also consistent with the well-established tenet that a person being questioned by a law enforcement officer during an investigatory stop "is not obliged to respond." Berkemer v. McCarty, 468 U.S. 420, 439 (1984). If the State were authorized to use a person's silence during an investigatory stop as substantive evidence of guilt, it would effectively punish a person for exercising a legal right, a result that is constitutionally unacceptable. Cf. State v. Wakisaka, 102 Hawai'i 504, 514-15, 78 P.3d 317, 327—28 (2003) ("[N]o 'penalty' may ever be imposed on someone who exercises his core Fifth Amendment right not to be a 'witness' against himself in a 'criminal case.'" (quoting Chavez v. Martinez, 538 U.S. 760, 768—760 (2003))); Griffin v. California, 380 U.S. 609, 613-14 (1965) (denouncing the practice of commenting on a defendant's silence as "a penalty imposed by courts for exercising a constitutional privilege" in that "[i]t "cuts down on the privilege by making its assertion costly").

Finally, we emphasize that the silence used against Tsujimura was not made in response to a question posed by Officer Billins. The prosecutor's question was whether Tsujimura told Officer Billins that his injuries would give him

a difficult time exiting his car; that is, the prosecutor was asking what Tsujimura failed to say even if the information was not prompted or sought from him by Officer Billins.[21]

In light of these circumstances, permitting silence to serve as an implication of guilt would mean that the State would always be able to use as substantive proof of guilt prearrest silence not made in response to a question by a police officer. The prosecutor need only identify a point in time during the defendant's interaction with the police officer when no question was posed and no verbal exchange was had (and, therefore, the defendant was expectedly silent) and use that silence as evidence to infer the defendant's guilt.  This would engender a result where, in any encounter between a law enforcement officer and a citizen, the State would be able to adduce evidence of

---

[21]    Under the facts of this case, where there was no verbal exchange between the police officer and the defendant, there is no requirement that the defendant invoke the right to remain silent because, at that particular juncture, there was no opportunity to do so.

We further reaffirm that, where the prearrest silence occurs in the context of a person's refusal to answer questions, there is no "express invocation" requirement in order to trigger the right to remain silent under the Hawai'i Constitution; we thus reject the holding of the plurality opinion in Salinas, which requires the defendant to expressly invoke the right to silence by "say[ing] that [he or she] was not answering the officer's question on Fifth Amendment grounds" or something similarly phrased. Salinas, 133 S. Ct. at 2180.  Hawai'i case law is clear that the constitutional right against self-incrimination under the Hawai'i Constitution is invoked when a person "either remains silent or expresses 'his desire to deal with police interrogators only through his counsel.'"  State v. Luton, 83 Hawai'i. 443, 453, 927 P.2d 844, 854 (1996) (emphasis added) (quoting State v. Mailo, 69 Haw. 51, 731 P.2d 1264 (1987)).  Thus, under the Hawai'i Constitution, the mere fact that a person remained silent in the face of police questioning is enough to invoke the right to remain silent, and "express invocation" is not necessary.

prearrest silence in myriad ways (e.g., When she was handing you her driver's license and registration, did she say anything about her injuries?, While she was opening the glove box, did she say anything about her injuries?, While she was outside the car, did she say anything?, etc.).

This acutely prejudicial effect is magnified for non-native English language speakers, youth, and other individuals detained at a traffic stop who may be reluctant to speak in the presence of law enforcement officers due to age, gender, or linguistic, cultural, or other reasons. The burden to explain at trial their prearrest silence would fall upon these defendants whenever the State uses their silence to imply their guilt, compromising their constitutional right to choose not to testify and raising questions of fundamental fairness.

Accordingly, for the reasons stated, the State may not use as substantive proof of guilt a defendant's prearrest silence that occurs at least as of the time of detention, for doing so would violate the right against compelled self-incrimination under article I, section 10 of the Hawai'i Constitution.

**2. The Constitutional Prohibition on Prosecutorial Comment on One's Exercise of the Right to Remain Silent**

In this case, the information about Tsujimura's prearrest silence was introduced at trial through the

prosecutor's redirect examination of Officer Billins, who testified that Tsujimura did not say that his injury would give him difficulty exiting his car. A concomitant of the right to remain silent is the prohibition on the prosecution from commenting on a person's exercise of that right. State v. Rodrigues, 113 Hawaiʻi 41, 49, 147 P.3d 825, 833 (2006) ("As a rule, the prosecution may not comment on a defendant's failure to testify." (quoting State v. Wakisaka, 102 Hawaiʻi 504, 514-15, 78 P.3d 317, 327-28 (2003))). A prosecutor may not imply guilt from a defendant's exercise of the right to remain silent, for doing so would dilute the right, undermine the values that the right protects, and penalize the defendant for exercising a constitutional right. See State v. Melear, 63 Haw. 488, 496, 630 P.2d 619, 626 (1981) (noting that a prosecutor may not comment on a defendant's silence in a manner that suggests such silence as evidence of guilt).

In evaluating the propriety of a prosecutor's comment in certain trial situations, the test that this court has "applied is whether the language used was 'manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.'" State v. Padilla, 57 Haw. 150, 158, 552 P.2d 357, 362 (1976) (quoting United States v. Wright, 309 F.2d 735, 738 (7th Cir. 1962)), overruled on other grounds by State

v. Cabagbag, 127 Hawai'i 302, 277 P.3d 1027 (2012). The Padilla test was designed and has been most often used in cases where the prosecutor makes comments, after the close of evidence, on the defendant's failure to testify. See, e.g., Melear, 63 Haw. at 496, 630 P.2d at 626 (closing argument); Wakisaka, 102 Hawai'i at 515, 78 P.3d at 328 (rebuttal argument); State v. Valdivia, 95 Hawai'i 465, 481, 24 P.3d 661, 677 (2001) (closing and rebuttal arguments).[22] Approximately ten years ago, this court avowed application of the Padilla test in a case involving a question-and-answer exchange between a prosecutor and a detective during the State's case-in-chief. In Rodrigues, the prosecutor asked the detective what the defendant's response was to the detective's request to tape-record their conversation. 113 Hawai'i at 46, 147 P.3d at 830. The detective answered, "As I recall, he did not wish to be tape-recorded." Id. The defendant later challenged the information elicited, contending that his refusal to be tape-recorded was used as a negative

---

[22] The origin of the Padilla test is illuminating in this regard. It was originally adopted by this court from United States v. Wright, a Seventh Circuit case involving a challenge to a portion of the prosecutor's closing argument. 309 F.2d at 738–739. Wright borrowed the Padilla formulation from Knowles v. United States, which also involved a challenge to the prosecutor's closing argument. 224 F.2d 168, 170 (10th Cir. 1955). Knowles, in turn, adopted the Padilla test from Morrison v. United States, an Eighth Circuit case that dealt with the propriety of the court's jury instructions. 6 F.2d 809, 811 (8th Cir. 1925). It is thus apparent that the Padilla test was originally fashioned to cover situations in which the defendant seeks to challenge the conduct of the prosecutor or the court that occurs after the close of evidence, not instances in which the challenge relates to information elicited by a prosecutor from a witness during the testimony phase of the trial.

inference of his credibility and, thus, improperly commented on his right to remain silent. Id. at 49, 147 P.3d at 833.

In rejecting the defendant's challenge, this court focused on the purpose of the prosecution in adducing information about the defendant's refusal to be tape-recorded and the fact that the information did not suggest any inference of guilt. The court explained "that the question . . . posed, and the information elicited, [w]as part of the prosecution's effort to maximize the reliability of [the detective's] recollections and to explain why the detective could only rely on his notes and not an audiotape of the interview." Id. Further, the court reasoned that the prosecutor's question was "part of a line of inquiry designed to establish the detective's custom and practice regarding accurately transcribing . . . statements" and "was unaccompanied by any implication of guilt with respect to [the defendant]'s unwillingness to be audiotaped." Id. at 49-50, 147 P.3d at 833-34. Accordingly, the court held that the information elicited from the detective during the State's case-in-chief was not an improper comment on the defendant's right to remain silent. Id. at 50, 147 P.3d at 834.

We note that the plain language of Padilla--"comment on failure to testify"--is not readily applicable to cases involving a question-and-answer exchange between a prosecutor

and a witness that leads to evidence concerning the defendant's pretrial silence. Padilla's focus is on a defendant's "failure to testify" and not on a defendant's pretrial exercise of the right to remain silent.[23] In addition, although Rodrigues appears to have made the Padilla framework applicable to cases with facts generally similar to this case, Rodrigues actually adjusted and particularized the Padilla framework to make it more suitable for application in situations where the challenged "comment" is made during a question-and-answer exchange between a prosecutor and a witness. It is evident from the court's line of reasoning in Rodrigues that the core of the analysis is predicated upon the prosecution's purpose in eliciting the contested evidence or on the character of the evidence. See id. at 49–50, 147 P.3d at 833–34 (reasoning that the purpose of the prosecution's question was not to imply guilt and that the information elicited "was unaccompanied by any implication of guilt").

We now clarify the Rodrigues test: In cases where the prosecution elicits from a witness information regarding the defendant's prearrest silence, the test is whether the

_____

[23] The exchange between the prosecutor and the witness commonly transpires during the State's case-in-chief; thus, the prosecutor under such circumstances would not have the opportunity to comment on the defendant's "failure to testify" because the defendant's presentation of his or her case is yet to commence such that it is still uncertain whether the defendant would choose to testify. See Hawai'i Rules of Penal Procedure Rule 24.1(a) (2000) (providing that the defendant's case typically commences at the close of the State's case-in-chief unless the court orders otherwise).

prosecutor intended for the information elicited to imply the defendant's guilt or whether the character of the information suggests to the factfinder that the defendant's prearrest silence may be considered as inferential evidence of the defendant's guilt.  See also Ouska v. Cahill-Masching, 246 F.3d 1036, 1049 (7th Cir. 2001) (concluding that the prosecutor's questions regarding the defendant's prearrest, pre-Miranda silence were improper because they were used to infer the defendant's guilt); Tortolito v. State, 901 P.2d 387, 391 (Wyo. 1995) (determining that the prosecutor's questions to the officer regarding the defendant's prearrest silence was impermissible and that "[a] comment upon an accused's silence occurs when used to the state's advantage either as substantive evidence of guilt or to suggest to the jury that the silence was an admission of guilt"); State v. Easter, 922 P.2d 1285, 1289 (Wash. 1996) (noting that "the State may not elicit comments from witnesses or make closing arguments relating to a defendant's silence to infer guilt from such silence"); State v. Leach, 807 N.E.2d 335, 339 (Ohio 2004) (testimony regarding the defendant's prearrest silence was improperly admitted because it "was clearly meant to allow the jury to infer [the defendant]'s guilt"); Commonwealth v. Collett, 455 N.E.2d 1006, 1008 (Mass. App. Ct. 1983) (in evaluating whether testimony regarding the defendant's prearrest silence was properly admitted, the court

reasoned that the prosecutor "did not ask the jury to infer an admission or consciousness of guilt from the defendant's silence"); State v. Terry, 328 P.3d 932, 938 (Wash. Ct. App. 2014) (explaining that an indirect comment on the defendant's prearrest silence, adduced by a question at trial, is improper if it implies the defendant's guilt).

### 3. The Information Elicited by the Prosecutor Violated Tsujimura's Right to Remain Silent

As stated, the information elicited by the prosecutor from Officer Billins during the State's case-in-chief is the fact that Tsujimura did not say anything about his injury as he was exiting his car. The ICA concluded that the information elicited by the prosecutor was not a comment on the right to remain silent because the prosecutor's question and "Officer Billins' answer were directed at whether there was any indication that Tsujimura's prior knee injury affected his ability to perform the field sobriety tests." State v. Tsujimura, 137 Hawai'i 117, 124, 366 P.3d 173, 180 (App. 2016). However, the fact that Tsujimura's prearrest silence was used to prove that his performance of the FSTs was not affected by his injury is exactly the reason why the information elicited was an impermissible comment. By eliciting the fact that Tsujimura did not say anything about his injury while he exited his car, it was clear that the State's purpose was to imply that Tsujimura's

injuries did not physically inhibit him from performing the FSTs and to inferentially establish that Tsujimura's diminished faculties during the FSTs were a product of intoxication and not influenced by his injuries.

This purpose was essentially conceded by the State when it indicated in its answering brief that one of the purposes of the prosecutor's question was to "show that there was no indication that Tsujimura's leg injury affected the FST test." The State therefore intended for the exchange between the prosecutor and Officer Billins to adduce information about Tsujimura's prearrest silence as substantive proof of his guilt, which as discussed supra, the State may not do. See also Ouska v. Cahill-Masching, 246 F.3d 1036, 1049 (7th Cir. 2001); State v. Leach, 807 N.E.2d 335, 339 (Ohio 2004); Tortolito v. State, 901 P.2d 387, 391 (Wyo. 1995).

In addition, even if we were to assume that the State's purpose in offering evidence of Tsujimura's prearrest silence was proper, the character of the evidence would still lead to the conclusion that its admission at trial was improper. The evidence suggested to the district court judge that Tsujimura's silence implied that his physical condition while performing the FSTs was due to alcohol impairment and that, therefore, he was guilty as charged. That is, the character of the information about Tsujimura's prearrest silence was such

42

that it suggested to the factfinder that Tsujimura's prearrest silence may be considered as inferential evidence of Tsujimura's guilt. And the district court accepted this suggestion. In finding Tsujimura guilty, the district court expressly relied on Officer Billins' testimony that when Tsujimura "alighted from the car, he did not indicate any difficulty walking." Thus, the court used Tsujimura's prearrest silence at least in part to find him guilty of OVUII.[24]

Accordingly, the information regarding Tsujimura's prearrest silence was erroneously admitted because the State's purpose in adducing it was to imply Tsujimura's guilt and because the character of the information suggested to the district court judge that it may be considered as inferential evidence of Tsujimura's guilt. Each of these reasons is independently sufficient to support the conclusion that the information elicited by the prosecutor violated Tsujimura's right against compelled self-incrimination guaranteed by article I, section 10 of the Hawai'i Constitution.[25]

---

[24] Although the district court judge in this case relied on evidence of prearrest silence in rendering his verdict, it is the State's purpose for proffering the evidence (whether the State intended for the evidence to imply the defendant's guilt) or the character of the evidence (whether it suggests to the factfinder that guilt may be inferred from prearrest silence) that is the pivotal consideration.

[25] It is noted that State v. Alo, 57 Haw. 418, 558 P.2d 1012 (1976), does not apply in this case. There, the defendant offered self-serving testimony as to statements he allegedly made to police after he was arrested and given Miranda warnings. Id. at 423, 558 P.2d at 1015. On cross-
(continued . . .)

The concurring and dissenting opinion (dissent) proposes that "the Rodrigues analysis requires courts to discern whether the State sought to imply a defendant's guilt by virtue of the very fact that the defendant was silent." Dissent at 4. According to the dissent, "the Rodrigues test requires courts to evaluate whether the State elicited evidence of the defendant's silence as direct evidence of the defendant's culpability, or whether the State sought to legitimately illustrate other relevant facts by virtue of the defendant's lack of verbal communication." Dissent at 6. Thus, the dissent posits that Rodrigues does not preclude the State from using a defendant's silence in order to imply other facts that "identify[] the gaps in the defendant's theory of the case or other exculpatory evidence that the defendant has adduced at trial." Dissent at 4.

We respectfully disagree with the dissent because its approach would allow the State to use a defendant's silence to indirectly imply or obtain evidence that bears upon the defendant's guilt. Under the dissent's view, a prosecutor's comment would be improper only if it directly suggested to the

(continued . . . )
examination, the State asked questions intended to establish that the defendant was silent post-arrest and post-Miranda. Id. at 421—32, 558 P.2d at 1014—15. This court held that the questions about defendant's silence after his arrest were proper. Id. at 425—26, 558 P.2d at 1017. Thus, in Alo, this court allowed the State to use post-arrest, post-Miranda silence in order to refute the defendant's testimony regarding what he allegedly said to the police at the time of his arrest.

factfinder that the defendant is guilty because he or she remained silent in a situation wherein an innocent person would have spoken.  In cases such as this one, the dissent's approach would permit the State to indirectly use the defendant's prearrest silence to gain substantive evidence that bears upon the defendant's guilt.  So long as the prosecutor's comment only utilizes silence in order to obtain other evidence or establish inferences that can substantively prove the defendant's guilt, the dissent's interpretation of Rodrigues would permit the comment.

        This could not be the case because direct and indirect use of a defendant's silence has the same ultimate effect: it serves as a mechanism for the State to imply the defendant's guilt.  The only difference between the two is the level of blatancy.  With indirect use, the State utilizes silence as the means to garner evidence or inferences that bear upon the defendant's guilt.  With direct use, the State employs silence as proof that the defendant is guilty for failing to speak.  In short, the dissent's framework would allow the State to do indirectly what the dissent concedes the State may not do directly.  In this case, for example, the dissent's framework deems the comment on Tsujimura's prearrest silence as constitutional because it illustrates "other relevant facts." Dissent at 6.  Those relevant facts, however, relate to the

determination of Tsujimura's guilt.  Thus, the dissent's framework runs counter to the rationale underlying the prohibition on the use of prearrest silence as substantive proof of guilt.[26]  See supra.  Whether silence is used directly or indirectly, the person against whom the silence is used would be punished for exercising a constitutional right in the same manner and to the same extent: under either instance, the person's silence would ultimately bear upon the determination of his or her guilt.  This result is in direct contravention of this court's precedents.  See, e.g., State v. Wakisaka, 102 Hawai'i 504, 514-15, 78 P.3d 317, 327-28 (2003).

Finally, the dissent's framework is not supported by Rodrigues.  Rodrigues did not hold that indirect use of silence as substantive proof of guilt, a course of action authorized

---

[26]    The dissent elaborates on its approach by indicating that it allows silence to be used to "support a collateral fact other than the defendant's guilt itself."  Dissent at 11.  The dissent then characterizes a defendant's physical state and state of mind as "collateral" facts that may be proved by relying at least in part on the defendant's silence.  Dissent at 10.  However, state of mind is an essential component of the State's burden of proof in criminal cases.  HRS § 702-204 (1993).  And a defendant's physical state is critical in offenses such as OVUII, see HRS § 291E-61(a)(1) (Supp. 2014), whose proof most often relies on the manner in which certain physical acts are performed and on the physical manifestations of intoxication and impairment.  To this extent, state of mind and physical state are hardly "collateral" or "ancillary."  Dissent at 9, 11.

Even accepting the dissent's framework--that silence may be used to establish collateral facts--Tsujimura's silence cannot be said to have been used in this manner.  Tsujimura's silence was used to prove that his performance of the FSTs was not influenced by his injury but by an intoxicant, thereby supporting a finding of guilt.  Thus, the use of his silence was not simply geared toward establishing a collateral "fact that is separate and distinct" from evidence of Tsujimura's guilt.  Dissent at 10.

under the dissent's framework, is permissible. The information about the defendant's silence in Rodrigues was not intended or used to establish, directly or indirectly, the defendant's guilt or innocence. See State v. Rodrigues, 113 Hawai'i 41, 49—50, 147 P.3d 825, 833-34 (2006) (explaining that the challenged line of inquiry "was unaccompanied by any implication of guilt" (emphasis added)). Thus, the dissent's framework, which would allow the indirect use of silence as a tool to elicit evidence or inferences that bear upon the defendant's guilt (as the State did in this case), is not consistent with Rodrigues.

### 4. The Error Was Not Harmless Beyond a Reasonable Doubt

When an error amounts to a violation of the privilege against compelled self-incrimination under article I, section 10, the analysis proceeds to whether the error was harmless beyond a reasonable doubt. See State v. Mainaaupo, 117 Hawai'i 235, 247—48, 178 P.3d 1, 13—14 (2008). "In applying the harmless beyond a reasonable doubt standard the court is required to examine the record and determine whether there is a reasonable possibility that the error complained of might have contributed to the conviction." State v. Balisbisana, 83 Hawai'i 109, 114, 924 P.2d 1215, 1220 (1996) (quoting State v. Holbron, 80 Hawai'i 27, 32, 904 P.2d 912, 917 (1995)). As discussed, the district court rendered its verdict in partial reliance upon

Officer Billins' testimony that Tsujimura did not say anything about his injury when he exited his car.  The district court also incorrectly assumed that it was proper for the State to use Tsujimura's prearrest silence in order to imply that he was under an obligation to say something at the time of the stop and that Tsujimura's prearrest silence could be used as substantive proof of guilt.  In addition, looking at the evidentiary record at trial--including evidence countervailing a finding of intoxication--it cannot be said that the error in admitting Officer Billins' testimony regarding Tsujimura's prearrest silence was harmless beyond a reasonable doubt.[27]  Id. Accordingly, Tsujimura's conviction must be vacated and the case remanded to the district court for a new trial.[28]  See Tachibana

---

[27]    For purposes of the harmless error analysis, it is assumed that the evidence regarding Tsujimura's performance of the FSTs was properly admitted, see supra note 6.

[28]    Tsujimura also asserts that there was insufficient evidence to establish that he was impaired by "alcohol" because the State did not introduce evidence that he consumed alcohol derived from distillation.  The statutory definition of "alcohol," as discussed supra Part IV.A, is not limited to alcohol produced by distillation.  Thus, the State was not required to introduce evidence as to the nature, origin, or the specific type of alcohol that Tsujimura consumed, and Tsujimura's contention that there was insufficient evidence to establish his consumption of alcohol produced by distillation is without merit.

Tsujimura additionally challenges the sufficiency of the evidence in support of his conviction.  Officer Billins testified regarding Tsujimura's driving before he was stopped, delayed reaction after he was asked to pull over, his physical condition, and his actions while performing the FSTs.  Even assuming that the district court improperly admitted testimony regarding whether Tsujimura passed or failed the FSTs, see supra note 6, the adduced evidence, viewed "in the light most favorable to the State," constitutes "substantial evidence to support the conclusion" that Tsujimura's mental faculties or ability to care for himself and guard against
(continued . . .)

v. State, 79 Hawai'i 226, 240, 900 P.2d 1293, 1307 (1995) ("Once a violation of the constitutional right to testify is established, the conviction must be vacated unless the State can prove that the violation was harmless beyond a reasonable doubt."); State v. Tabigne, 88 Hawai'i 296, 306-07, 966 P.2d 608, 618-19 (1998) (remanding the case for retrial after finding not harmless the constitutional error involved).

The dissent contends that, "even assuming that the comment was an improper comment on Tsujimura's silence, the comment was harmless beyond a reasonable doubt."  Dissent at 2. The dissent reasons that "the district court did not necessarily rely on Tsujimura's silence in finding that '[w]hen he alighted from the car, he did not indicate any difficulty walking.'" Dissent at 14.  According to the dissent, the district court's statement--that Tsujimura did not indicate any difficulty walking when he alighted from the car--could have been based on Officer Billins' observations, as gleaned from the officer's testimony and the district court's direct questions to the officer.  Dissent at 14.

We respectfully disagree with the dissent because the district court's statement, naturally read, was a description of

_____

(continued . . . )
casualty were impaired.  State v. Hirayasu, 71 Haw. 587, 589, 801 P.2d 25, 26 (1990) (quoting State v. Hernandez, 61 Haw. 475, 477, 605 P.2d 75, 77 (1980)).  Thus, Tsujimura's conviction was supported by legally sufficient evidence.

Tsujimura's failure to speak about any difficulty walking as he was exiting his car and during his interaction with Officer Billins. The sentence immediately prior to the district court's statement was, "When Mr. Tsujimura was asked to participate [by Officer Billins] in a field sobriety test, Mr. Tsujimura did indicate . . . there was an injury to his left leg." Thus, the court's use of "indicate" in all likelihood pertained to Tsujimura's oral responses or lack of responses to Officer Billins during their interaction. In any event, the alternative explanation that the dissent posits for the district court's statement does not eliminate the reasonable possibility that the district court relied on Officer Billins' reference to Tsujimura's prearrest silence and, as such, the reasonable possibility that this error might have contributed to Tsujimura's conviction. Balisbisana, 83 Hawai'i at 114, 924 P.2d at 1220.

In asserting that the admission of Tsujimura's prearrest silence into evidence was harmless, the dissent points to evidence other than Tsujimura's prearrest silence that supports the district court's finding of guilt. Dissent at 16—17. However, according to Officer Billins' testimony, Tsujimura's vehicle was not changing lanes, was not going over the speed limit, was not slowing down or speeding up, did not follow other vehicles too closely, and did not make any

50

inconsistent signals; it took Tsujimura only eight seconds to pull over from the time Officer Billins turned on his sirens and lights; and out of the 24 NHTSA visual detection clues, Tsujimura exhibited only one--trouble maintaining lane position. Officer Billins' testimony also indicated that Tsujimura did not repeat questions or comments, lean on his vehicle, or provide incorrect information or change his answers while being questioned; red, watery eyes could be caused by a number of factors other than alcohol impairment; and odor of alcohol is a poor indicator of a person's level of impairment and has no bearing on the amount and nature of the alcohol that the person consumed. Accordingly, the totality of the evidence against Tsujimura was far from compelling or overwhelming as to render harmless any error in admitting the State's comment on Tsujimura's prearrest silence. See Mainaaupo, 117 Hawai'i at 255, 178 P.3d at 21 (concluding that "the evidence . . . is not so overwhelming that we are convinced that the [deputy prosecuting attorney']s intrusion into [the defendant']s right to remain silent may not have contributed to his conviction").

## V. CONCLUSION

Accordingly, we hold that the right to remain silent under article I, section 10 of the Hawai'i Constitution attaches at least at the point at which a person has been seized. Such evidence regarding a person's exercise of the right to remain

silent may not be used as substantive evidence of guilt. Relatedly, the State may not elicit evidence of prearrest silence to imply the defendant's guilt or introduce evidence whose character suggests to the factfinder that the defendant's prearrest silence is inferential evidence of the defendant's guilt. In this case, Tsujimura's prearrest silence while detained during an investigatory stop was introduced into evidence as substantive proof of Tsujimura's guilt. The admission of this evidence was not harmless. Hence, the ICA Judgment on Appeal and the district court's judgment are vacated, and the case is remanded to the district court for a new trial.

Alen M. Kaneshiro                    /s/ Sabrina S. McKenna
for petitioner
                                     /s/ Richard W. Pollack
Sonja McCullen
for respondent                       /s/ Michael D. Wilson

